[Civ. No. 41573. Second Dist., Div. Five. Dec. 13, 1973.]

THOMAS O. BRADFORD, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Albert I. Kaufman for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Norman B. Peek and James R. Schwartz, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

KAUS, P. J.—Plaintiff appeals from a judgment entered after the general demurrer of the defendant State of California to plaintiff's complaint was sustained without leave to amend.

### The Allegations of the Complaint

On June 29, 1966, plaintiff was arrested for a violation of section 288 of the Penal Code. Eventually he was convicted of a violation of section 647a of that code and placed on probation, subject to certain conditions, for a period of two years. On November 4, 1969, the court in which he had been convicted dismissed the proceeding pursuant to section 1203.4 of the Penal Code.

Plaintiff's conviction obligated him to register as a sex offender pursuant to section 290 of the Penal Code. This duty ceased when the proceeding was dismissed under section 1203.4. (*Kelly* v. *Municipal Court,* 160 Cal. App.2d 38 [324 P.2d 990].) Nevertheless on May 26, 1971, the Glendale Police Department caused plaintiff to be charged with a violation of section

290—failing to register as a sex offender.[1] The Glendale proceedings were eventually dismissed on plaintiff's demurrer to the complaint, but in the meanwhile he had been "arrested, humiliated, charged with a violation of a public offense, booked, fingerprinted, required to appear in Court and defend himself of said charges, employ the services of an attorney, employ the services of a bail bondsman. . . ." The prayer of the complaint is for plaintiff's damages claimed to have resulted from the 1971 Glendale criminal charges.

The complaint goes on to allege that defendant State of California ("State") was notified of the 1969 dismissal of the charge arising out of the 1966 arrest.[2] Nevertheless, the State failed to make appropriate record entries of the dismissal—a mandatory requirement of sections 11116.6 and 11117 of the Penal Code.[3] This omission, alleged to have been negligent, was directly responsible for plaintiff's 1971 arrest by the Glendale police and the charge in the Glendale Municipal Court.[4]

---

[1]The complaint was filed in the Municipal Court for the Glendale Judicial District. The original conviction of plaintiff had been in the Los Angeles Judicial District.

[2]Such notification by the appropriate court attaches is required by section 11116 of the Penal Code, the pertinent paragraph of which then read in relevant part as follows: "Whenever a court shall dismiss the accusation . . . against a defendant under the provisions of Section 1203.4 of this code, . . . the clerk, . . . of that court shall furnish a report of such proceedings to the Bureau of Criminal Identification and Investigation and shall include therein such information as may be required by said bureau." Section 11116 was amended by Statutes 1972, chapter 1377, section 85 to provide that the report be furnished to the Department of Justice, rather than to the bureau.

[3]Such entries are required by sections 11116.6 and 11117 of the Penal Code reading as follows:

"§ 11116.6: The disposition labels provided by Sections 11115 and 11116 *must be entered on all appropriate records* of the party arrested, detained, or against whom criminal proceedings are brought."

"§ 11117: The Bureau of Criminal Identification and Investigation shall prescribe and furnish the procedures and forms to be used for the disposition reports required in this article. *The bureau shall add the disposition reports received to all appropriate criminal records.*

"The disposition reports required in this article shall be forwarded to the Bureau of Criminal Identification and Investigation and the Federal Bureau of Investigation within 30 days after the release of the arrested or detained person or the termination of court proceedings.

"Neither the disposition reports nor the disposition labels required in this article shall be admissible in evidence in any civil action." (Italics added.)

Section 11117 was also amended in 1972 (Stats. 1972, ch. 1377, § 86) to place the duties prescribed therein on the Department of Justice, rather than the bureau.

[4]In addition to alleging the State's negligent failure to make an appropriate record of the dismissal, plaintiff also alleges that the State negligently informed the Glendale police that plaintiff was required to register as a sex offender, which information caused plaintiff's arrest.

## Discussion

On demurrer this is a very straightforward case based on the State's failure to perform its mandatory duty to record the dismissal of the 1966 charge. Its simplicity has been obscured by the State's hitherto successful attempt to impute a different, possibly sterile theory of liability to the plaintiff.

To understand the error in the State's view of the thrust of this complaint, a little perspective may be of help. The California Tort Claims Act of 1963 (Stats. 1963, ch. 1681) clearly differentiates between entity liability (Gov. Code, § 815 et seq.) and employee liability (Gov. Code, § 820 et seq.).[5] Section 815 states that there is no entity liability, unless it is established by statute. It goes on to say that entity liability is subject to any immunity "of the public entity" provided by statute.[6]

Section 815.2, subdivision (a), then provides for one particular kind of entity liability, namely, liability for acts or omissions of employees if their acts or omissions create a cause of action against such employees. This derivative type of entity liability depends, generally, on the employee for whom the entity is responsible, not being personally immune. (§ 815.2, subd. (b).)[7]

Section 815.2 is, however, not the only route to entity liability. Section 815.6 provides a basis of direct entity liability entirely independent of the derivative liability created in section 815.2. The section reads: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

---

[5]Unless otherwise noted all further code references are to the Government Code.

[6]Section 815 of the Government Code reads as follows: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

[7]Section 815.2 of the Government Code reads as follows: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Nothing in the act suggests that an employee immunity, which is a defense to derivative entity liability under section 815.2, subdivision (a), is also available as a defense to direct entity liability under section 815.6.[8]

In a nutshell the State's erroneous concept is that plaintiff is out of court because any state employee for whose omission the State would be vicariously liable under section 815.2, has immunity by virtue of the employee immunity provided for in section 821.6;[9] therefore direct liability imposed by section 815.6 may be disregarded. This argument completely overlooks the Legislative Committee comment to section 815: "In general, *the statutes imposing liability are cumulative in nature, i.e.,* if liability cannot

---

[8]The possibility of a mistaken belief to the contrary was not unforeseen at the time of the enactment of the 1963 California Tort Claims Act. Professor Van Alstyne, its most prestigious interpreter, wrote at the time: "A third liability provision that was apparently intended to prevail, at least in part, over statutory immunities is Govt C §815.6, which imposes liability on public entities for unjustified failure to discharge a mandatory duty imposed by enactment. . . . Yet it seems clear that in most cases coming within §815.6, the failure will consist of a public employee's discretionary act or omission, for which the employee is personally immune under Govt C §820.2. Which provision controls—the liability of §815.6; or the employee's immunity under §820.2, made applicable to the entity by §815.2(b)? Taken literally, it appears that the liability of §815.6 would prevail, because it is inconsistent with the employee's statutory immunity, and thus is a liability 'otherwise provided by statute' within the meaning of the section 815.2(b) exception. This result is consistent with the legislative intent. In outlining its proposed legislative program, the Law Revision Commission suggested that public entities should, in certain cases, be liable even though their employees were immune. 'For example, a public entity is made liable under the recommended legislation for its failure to exercise reasonable diligence to comply with a mandatory statute or enactment.' California Law Revision Commission, RECOMMENDATION RELATING TO SOVEREIGN IMMUNITY 815; see also 812.

"It is clear from the legislative history that §815.6 supersedes only entity immunities that are claimed to derive from employee immunities through §815.2(b). . . . Statutory immunities that, in terms, directly apply to public entities will prevail over §815.6 under the general rule laid down by Govt C §815(b). . . ." (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 5.30, pp. 141-142.)

[9]Essentially, the State argues that if it is liable at all, it is liable by way of respondeat superior—section 815.2—for the negligent omission of an unidentified employee, which resulted in the Glendale criminal proceeding against plaintiff. The reason the State attempts to confine the plaintiff to vicarious liability by way of employee liability is plain: it is the broad interpretation of section 821.6. relating to employee immunity for the institution or prosecution of judicial proceedings, as embodied in a series of Court of Appeal decisions starting with *Watson* v. *County of Los Angeles,* 254 Cal.App.2d 361 [62 Cal.Rptr. 191] and ending, as of today, with *Herndon* v. *County of Marin,* 25 Cal.App.3d 933 [102 Cal.Rptr. 221]. Other decisions relied on by the State are *Apelian* v. *County of Los Angeles,* 266 Cal.App.2d 550, 554 [72 Cal.Rptr. 265]; *Stearns* v. *County of Los Angeles,* 275 Cal.App.2d 134, 137 [79 Cal. Rptr. 757] and *Johnson* v. *City of Pacifica,* 4 Cal.App.3d 82, 85-86 [84 Cal.Rptr. 246]. These cases are, however, quite irrelevant here. Even if they furnish immunity to the particular employee who failed to perform the mandatory duty to record the dismissal of the 1966 proceeding against plaintiff, such a holding would simply negative the State's derivative liability under section 815.2.

be established under the requirements of one section, liability will nevertheless exist if liability can be established under the provisions of another section." (Italics added.)

If statutes imposing liability are cumulative, the fact that derivative liability under section 815.2 may be nullified by an employee immunity in no way affects direct liability based on section 815.6. Such liability could only be negatived by a statutory entity immunity. (Gov. Code, § 815, subd. (b).) We know of none.[10]

The State does not contend that the duty to record a dismissal under section 1203.4 of the Penal Code, mandated by section 11116.6 of that code, is not designed to protect against the particular type of harm suffered by plaintiff. The concession is appropriate. The section 1203.4 dismissal released plaintiff from "all penalties and disabilities" resulting from the 1967 conviction. The twin requirements of sections 11116 and 11116.6 that the court report such a dismissal to the State and that the State enter it in the appropriate record, are clearly designed to prevent the very type of harm which befell plaintiff—an unjustified attempt to prosecute him for failing to pay a "penalty" from which he had been released.[11]

The judgment is reversed.

Stephens, J., and Hastings, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 8, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.

---

[10]At the time of the oral argument we requested further informal briefing on the question of any potentially applicable entity immunity. The State now suggests that plaintiff's action is really one for negligent misrepresentation to the Glendale police. (See fn. 4, *supra*.) It then points to the entity immunity for misrepresentation stated in section 818.8.

Out of the many possible answers to this suggestion we mention only two: 1. The allegation is clearly surplusage. The gravamen of the charge against the State is its negligent failure to record the dismissal, rather than negligence in failing to tell the Glendale police about it. 2. The immunity of section 818.8 has been severely limited to "interference with financial or commercial interest." (*Johnson* v. *State of California*, 69 Cal.2d 782, 800 [73 Cal.Rptr. 240, 447 P.2d 352].)

[11]To avoid misunderstanding we note that the complaint also attempts to state a cause of action against Doe defendants, alleged to be the particular employees who negligently failed to record the dismissal. This opinion is purposely silent on the question whether the complaint states a cause of action against these employees. None has ever appeared. Indeed, even if plaintiff at the trial of this case establishes that the State, as an entity, has failed to perform its mandatory duty, he may never be able to place the blame on any particular employee, since the breach of duty alleged consisted of inaction.