[Civ. No. 37258. First Dist., Div. One. Oct. 21, 1976.]

OBIE WILLIAMS, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Thomas W. Pulliam, Jr., David F. Chavkin, J. Kendrick Kresse, Andrea Saltzman and David Rapport for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Robert L. Bergman, Assistant Attorney General, and Leonard M. Sperry, Jr., Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**MOLINARI, P. J.**—Plaintiff appeals from a judgment dismissing his action for damages against defendant State of California (hereinafter "the State") following the sustaining of a demurrer to the complaint without leave to amend.

The complaint alleges as follows: On August 23, 1972, plaintiff applied for benefits under the aid to the totally disabled program (hereinafter "ATD"); his application was denied on December 7, 1972. On January 10, 1973, plaintiff requested a fair hearing which took place on March 12, 1973. On March 21, 1973, the referee submitted his proposed decision finding plaintiff eligible for ATD benefits. Defendant, David Swoap, the Director of the California State Department of Benefit Payments failed to issue a final decision within the mandatory period provided for by law. On December 7, 1973, plaintiff presented to the State Board of Control a claim for damages in the sum of $10,000 for injury proximately caused by defendants failing to perform their mandatory duty. On January 29, 1974, plaintiff received notice that on January 23, 1974, the Department of Social Welfare had adopted the proposed decision of the referee that plaintiff was entitled to ATD benefits. On February 5, 1974, plaintiff's claim for damages was denied by the Board of Control.

The gist of the charging allegations of the complaint is that by defendants' delay in granting him ATD assistance plaintiff's health was injured and he suffered mental pain and suffering and emotional distress.

The State demurred to the complaint on the grounds that it failed to state facts sufficient to constitute a cause of action and there is another action pending between the same parties on the same cause of action. In the points and authorities in support of the demurrer the State argued that plaintiff cannot maintain this action for damages because the State is immune from liability for damages. The lower court sustained the demurrer without leave to amend and noted in its order that the demurrer was sustained on the ground that there is another action pending between the same parties on the same cause of action and noted that it was overruling the general demurrer on the ground that the State is immune from liability. Following the sustaining of the State's demurrer plaintiff voluntarily dismissed, without prejudice, the action against all of the named defendants other than the State. Accordingly, this action is proceeding solely against the State and our inquiry on appeal is concerned solely with the propriety of the sustaining without leave to amend of plaintiff's complaint against the State.

We consider whether the lower court properly sustained the demurrer on the ground that there is another action pending between the same parties on the same cause of action. In so doing we note that the other

pending action referred to in the lower court's order is the case of *King* v. *Martin,* Alameda County Superior Court No. 398769. The *King* case was a class action which resulted in a reversal by the Court of Appeal on December 3, 1971, of a judgment denying mandate in 21 Cal.App.3d 791 [98 Cal.Rptr. 711].[1] The reversal was with directions to grant relief compelling compliance with the requirement of the regulation that fair hearing decisions be rendered within 60 days.

In *Cartwright* v. *Swoap,* 40 Cal.App.3d 567 [115 Cal.Rptr. 402], the appellate court noted, in reviewing the propriety of the issuance of a writ of mandate directing David Swoap, Director of Benefit Payments, "to render final decisions within 60 days in his administrative hearings," that *King* was a class action to compel the then Director of Social Welfare to comply with federal and state law to issue decisions upon administrative hearings within the time prescribed by law. The court in *Cartwright* held that the petitioners in that case were members of the class in *King,* and that a writ of mandate will not issue if there is a plain, speedy, and adequate remedy in the ordinary course of law, and that the petitioners' remedy was to establish their membership in the class recognized and embraced in the *King* case. (At p. 571.)

The instant case presents a different situation from that in *Cartwright.* Plaintiff is not seeking a writ of mandate to compel compliance with the requirement that a decision by the director be rendered within the time required by law but for damages alleged to have been proximately caused by the director's failure to render his decision within the mandatory time. In sum, he is seeking a remedy other than that afforded him in *King.* The remedy in *King* is for mandate to compel action and does not provide an adequate remedy for compensation for damages.

The underlying theory of the plea that there is another action pending is that the first action normally will be an ample remedy and that the second action is therefore unnecessary and vexatious. (*Wulfjen* v. *Dolton,* 24 Cal.2d 891, 896 [151 P.2d 846]; *Colvig* v. *RKO General, Inc.,* 232 Cal.App.2d 56, 70 [42 Cal.Rptr. 473].) Such a plea does not challenge plaintiff's claim on the merits, but merely objects to the particular proceeding to enforce it. (*Colvig* v. *RKO General, Inc., supra*; see *Nevills* v. *Shortridge,* 146 Cal. 277, 278 [79 P. 972].) ■ For this reason this ground of demurrer, regarded as a plea in abatement, is not favored. (*Lord* v. *Garland,* 27 Cal.2d 840, 848 [168 P.2d 5]; *Colvig* v. *RKO General, Inc., supra.*)

---

[1] A petition for hearing was denied by the Supreme Court.

■ A demurrer on the ground of another action pending will not be sustained if the former action is no longer pending. (*Colvig* v. *RKO General, Inc., supra,* 232 Cal.App.2d 56, 71; *National Auto. Ins. Co.* v. *Winter,* 58 Cal.App.2d 11, 16 [136 P.2d 22].) An action is deemed pending only from the time of its commencement until its final determination on appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied. (*Ex parte Joutsen,* 154 Cal. 540, 543 [98 P. 391]; *Colvig* v. *RKO General, Inc., supra.*) In the instant case the asserted prior action was finally determined on appeal prior to the commencement of the instant action. ■ We apprehend that although judgments in class actions will be binding on all members of the class, including persons coming subsequently into the class (*Cartwright* v. *Swoap, supra,* 40 Cal.App.3d 567, 570, fn. 5; *Diaz* v. *Quitoriano,* 268 Cal.App.2d 807, 812 [74 Cal.Rptr. 358]), the effect of the class action decree is that it is a judgment which can be availed of by every member of the represented class, present or future. (See *Weaver* v. *Pasadena Tournament of Roses,* 32 Cal.2d 833, 842 [198 P.2d 514]; *Diaz* v. *Quitoriano, supra.*) ■ Accordingly, the effect of the *King* case is that every member of the class is entitled to compliance by the director that he render his final decision within the time provided by federal and state law. It did nothing more. There is nothing in *King* which adjudicates whether a member of the class may sue the director for damages if the director delays his decision and the member of the class has sustained injury by reason of the delay.

It is also fundamental that in order to sustain the plea of another action pending it is essential that it shall appear, in addition to the requirement that both suits are pending, that both suits are predicated upon the same cause of action and that both suits are contested by the same parties. (*Colvig* v. *RKO General, Inc., supra,* 232 Cal.App.2d 56, 70; *Hanrahan* v. *Superior Court,* 81 Cal.App.2d 432, 435 [184 P.2d 157].) We do not perceive that the *King* case and the instant case are predicated on the same cause of action. In *King* the action merely sought to compel compliance by the director with federal and state law. It did not seek damages as does the instant case for damages for personal injuries allegedly sustained by the plaintiff by reason of defendants' delay in granting him ATD assistance. Both suits are not contested by the same parties. While all persons similarly situated as the petitioner in *King* are parties to that action, all of such persons have not necessarily suffered personal injuries because of the delay in receiving ATD assistance.

The trial court erred, therefore, in sustaining the demurrer on the ground that there is another action pending between the same parties on the same cause of action. The sustaining of the demurrer on this ground alone does not, however, preclude our determining whether the demurrer should have been sustained on the ground that the complaint does not state a cause of action. ■ The trial court's ruling should be upheld if it can be sustained on any of the grounds upon which the demurrer is based. (*Elton* v. *County of Orange,* 3 Cal.App.3d 1053, 1058-1059 [84 Cal.Rptr. 27].)

The State's demurrer on the ground that the complaint does not state a cause of action is predicated upon the basis that the State is immune from liability. In considering this contention we first observe that public entities are liable in tort only to the extent declared by statute and that such liability where it exists is subject to certain statutory immunities and defenses. (Gov. Code, § 815.)[2] We also note vicarious liability is imposed upon public entities for the tortious acts and omissions of their employees and that, except as otherwise provided by statute, a public entity cannot be held liable for an employee's act or omission when the employee himself would be immune. (§ 815.2.)

In the instant case plaintiff's complaint alleges that the director failed to perform the mandatory regulatory duty requiring him to render a final decision within 60 days after plaintiff's request for a fair hearing concerning a denial of ATD benefits.[3] The 60-day limitation has been held to be mandatory rather than directory. (*King* v. *Martin, supra,* 21 Cal.App.3d 791, 794-795; and see *Henderling* v. *Carleson,* 36 Cal.App.3d 561, 566 [111 Cal.Rptr. 612], holding that Welf. & Inst. Code, § 10959 providing for a 30-day time limit for the director to act on the referee's proposed decision is mandatory.)

■ The statute upon which plaintiff appears to base his claim of liability is section 815.6 which declares that the failure to comply with

---

[2]Unless otherwise indicated all statutory references are to the Government Code.

[3]An implementing regulation of the Secretary of Health, Education and Welfare provided that "Prompt, definitive and final administrative action will be taken within 60 days from the date of a request for a fair hearing." (45 C.F.R. (1972) § 205.10, subd. (a)(11).) The 60-day time limit has been changed to 90 days in 45 Code of Federal Regulations (1973) section 205.10, subdivision (a)(16) effective October 15, 1973. (38 Fed. Reg. No. 157 (1973) 22005, 22008.) Pursuant to the provisions of Welfare and Institutions Code section 10959 the director, within 30 days after receiving a copy of the referee's proposed decision, may adopt the decision in its entirety, decide the matter himself, or order a rehearing. Judicial review of the director's final decision is by petition for a writ of mandate. (Welf. & Inst. Code, § 10962.)

applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. (See Law Revision Com. comment to § 815.6.) Section 815.6 provides as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

In *Elton* v. *County of Orange, supra,* 3 Cal.App.3d 1053, plaintiff, a dependent child, sought damages for mental and physical injuries allegedly sustained as the result of the negligence of the foster parents and the county and its departments in entrusting and maintaining plaintiff in a foster home. In a second cause of action premised upon the provisions of section 815.6 plaintiff alleged the county's failure to enforce and comply with regulations governing dependent children and foster homes enacted and promulgated by the State Department of Social Welfare. The complaint was held to have sufficiently alleged negligence and the failure of the county to comply with mandatory duties. The reviewing court noted with respect to the second cause of action that liability was predicated upon the county's failure to perform the inspection, supervision and control functions required by state regulations. (3 Cal.App.3d at p. 1059.)

In *Ramos* v. *County of Madera,* 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93], the Supreme Court held that a complaint alleging that the defendant county's welfare department required the plaintiffs' children under the age of 12 to perform agriculture labor as a condition of the continuation of county aid to the childrens' families under the aid to families with dependent children program, and that, as a result of such work, the children suffered injuries, stated a cause of action against the county under section 815.6. (4 Cal.3d at pp. 695-696.) The reviewing court held that it was the mandatory duty of the county to furnish aid according to the AFDC program and that the authority given to the counties did not extend to the imposition of radically different standards of eligibility on persons otherwise entitled to aid. (At pp. 694-695.)

The court in *Ramos* rationalized that even if the county or its agents had discretion to establish additional requirements of eligibility, the Labor Code forbids the employment of the minors under conditions not

complied with in the case before it. The court observed that a public entity may be liable in tort "where it knows or should know that its failure to exercise its duty to reasonably supervise employees will result in coercing others to violate the state laws, and where such violation proximately results in an injury of the kind which the law was designed to prevent." (At p. 696.) The court noted further that the injuries allegedly sustained were a foreseeable result of the alleged tortious coercion (at p. 692); that the entities were conclusively presumed to have knowledge of the statutes that were violated; and that they had a mandatory duty "not to coerce others—either by force or by a threatened withdrawal of life-sustaining aid—to *violate* state laws, whether or not the entity is specifically charged with enforcing that particular law." (At p. 696.)

In *Bradford* v. *State of California*, 36 Cal.App.3d 16 [111 Cal.Rptr. 852], the plaintiff was convicted of a sex offense requiring registration as a sex offender. He was placed on probation and, on his fulfillment of the conditions of probation, the proceedings were dismissed pursuant to the provisions of the Penal Code. This dismissal relieved him of all penalties and disabilities including the duty to register as a sex offender. Provisions of the Penal Code also required that state employees make appropriate record of the dismissal. The plaintiff alleged that the entries were not made; that he was arrested for failure to register, booked, fingerprinted, required to obtain bail, and obliged to hire an attorney to obtain a dismissal of the charge. The complaint was held to state a cause of action for damages regardless of whether the employee failing to make the entry would be immune from liability. (At p. 21.) The reviewing court observed that the statutory requirement of the entry of dismissal was designed to prevent the very type of harm which plaintiff alleged. (At p. 21.)

*Bradford* also holds that under section 815.6 the State was not immune to an action for damages for failure to exercise a mandatory duty on the basis that the State's derivative liability under section 815.2 was nullified by the immunity of the State employee responsible for the omission because section 815.2 in no way affected the direct liability based on section 815.6. The rationale of this holding is that the statutory liabilities are cumulative. (36 Cal.App.3d 16, 19-21.)

In *Elson* v. *Public Utilities Commission*, 51 Cal.App.3d 577 [124 Cal.Rptr. 305], liability for damages was sought to be imposed upon the Public Utilities Commission for failure to revoke the certificate of a

carrier which failed to carry liability insurance as required by a regulation of the commission. The appellate court held that there was a mandatory duty imposed upon the commission by the Public Utilities Code to institute an action against the carrier to prevent the violation of the commission's rules requiring liability insurance. The rationale of the holding is that the enactment which imposed the mandatory duty was designed to protect against the risk of the particular injury involved and that the injury was proximately caused by the failure to perform the duty. (At p. 582.)

A perusal of the opinions in *Elton, Ramos, Bradford* and *Elson* discloses that in each of these cases the reviewing court concluded that the failure to discharge the mandatory duty imposed by the enactment relied upon was the failure to perform a duty clearly designed to protect against the risk of the particular kind of injury for which damages were sought. We do not perceive that such is the situation in the present case.

The allegations of the complaint in the instant case are that the director had a mandatory duty to comply with the requirements that he take prompt, definitive and final administrative action within the time prescribed by law and that as a direct and positive result of such omission plaintiff suffered injuries for which he seeks damages. We apprehend that the duty imposed upon the director was not a duty to act in a particular way "to protect against a particular kind of injury," i.e., the injuries alleged by plaintiff. The injuries of which plaintiff complains were not the particular kind of injury that the failure to render a decision would necessarily cover. The mandatory duty was to act, not to act by awarding benefits to the petitioner. (See *Henderling* v. *Carleson, supra,* 36 Cal.App.3d 561, 568.)

Welfare and Institutions Code section 10959 provides: "Within 30 days after receiving a copy of the referee's proposed decision, the director may adopt the decision in its entirety; decide the matter himself on the record, including the transcript, with or without taking additional evidence; or order a rehearing to be conducted by himself, the administrative adviser of the department, or another referee in behalf of the director. . . ." None of these alternatives guarantee that the applicant will receive benefits. We observe, moreover, that Welfare and Institutions Code section 10959 was amended in 1974 (Stats. 1974, ch. 1056, § 1) to provide that if the director fails to act as therein provided it shall be deemed an affirmation of the referee's proposed decision. Such affirmance does not necessarily mean that the applicant is entitled to benefits

since the referee's proposed decision may provide that the applicant is not entitled to benefits.

We perceive that the requirement that the director shall render a prompt, definitive and final administrative decision within the time limitations imposed by the applicable regulations and statutes has for its objective the granting of timely relief to persons who request fair hearings. The timely relief in the form of the director's decision, however, is but one step in the statutory proceedings afforded an applicant for or recipient of social services who is dissatisfied with any action of the county department relating to his or her application for or receipt of and/or services. (See §§ 10950-10965.) The adoption by the director of the referee's decision whether to grant or deny benefits or the decision of the director himself to grant or deny benefits is not a final decision but is subject to further review. Thus, where the applicant or recipient is dissatisfied with the director's decision (whether it be his own decision or his adoption of the referee's decision), he or she may file a request for a rehearing and if such request is granted by the director the rehearing shall be conducted in the same manner and subject to the same time limits as the original hearing. (See § 10960.) We note, further, that after receiving notice of the director's final decision the applicant, recipient or the affected county may file a petition with the superior court, under the provisions of section 1094.5 of the Code of Civil Procedure, praying for a judicial review of that decision. (See § 10962.) The judgment of the superior court, in turn, is subject to judicial review on appeal. (Code Civ. Proc., § 1094.5, subd. (f).)

The proceedings providing for a review of the director's final decision indicate that there is no assurance that the applicant or recipient will receive benefits even upon the rendition by the director of a favorable decision. In sum, it is apparent that the procedures afforded for review provide for a delay in the award or denial of benefits that is necessarily inherent in the review process. Accordingly, we conclude that, as a matter of law, the requirement that the director render a timely decision is not designed to protect against the risk of the particular kind of injury alleged in the complaint and that such an injury is not proximately caused by the failure to perform such mandatory duty.

In view of the conclusion we have reached we need not consider the State's contention that it is immune from liability notwithstanding any general rule of liability.

In summary, we hold that the complaint does not state a cause of action because *its* allegations *do not* plead liability based on a California statute. The judgment is therefore affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied November 18, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.