[Civ. No. 24979. Fourth Dist., Div. One. Dec. 24, 1982.]

DONALD R. SHELTON et al., Plaintiffs and Appellants, v.
CITY OF WESTMINSTER et al., Defendants and Respondents.

COUNSEL

Marc Creighton Block for Plaintiffs and Appellants.

Ruston & Nance and Lee P. O'Connor for Defendants and Respondents.

**OPINION**

**STANIFORTH, J.**—Plaintiffs (Sheltons) appeal a judgment of dismissal entered upon an order sustaining, without leave to amend, the general demurrer of defendants City of Westminster and police employee (City) to Sheltons' second amended complaint (complaint). For the reasons set forth we affirm the order.

For purposes of the demurrer and this appeal, the factual allegations of the complaint must be taken as true. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216].) The complaint alleged in substance the following:[1] Sheltons' son Mark Duane Shelton was an apparent homicide victim of the "Freeway Killers." Mark had been missing since August 4, 1979, when screams were heard by the Sheltons' neighbors. On October 6, 1979, the Sheltons filed a missing persons report with the Westminster Police Department. Sheltons allege the police officers told them their missing person report would be fully and completely investigated; in fact the City failed to provide them with a form from the California Department of Justice authorizing the release of their son's dental records. Sheltons allege such a procedure-duty is required by Penal Code section 11114.[2]

Sheltons' son was found dead on August 11, 1979, in San Bernardino County and was listed by San Bernardino officials as an unknown person—John Doe No. 16-79. Sheltons were not informed John Doe 16-79 was their son until April 1, 1980. Sheltons charged the City's failure to obtain their son's dental record and forward it to the Department of Justice in a timely manner caused damages such as investigation expense, grief and sorrow, shock and injury to the nervous system, mental and physical pain and suffering, permanent disability, medical and other expenses related to these injuries.

---

[1]The seven separate causes of action all rest upon the same factual base but assert different legal theories as bases for recovery. We examine the different theories in turn.

[2]At relevant times (1978) Penal Code section 11114 provided in part: "(a) When a person reported missing has not been found within 30 days, the sheriff, chief of police, coroner or medical examiner, or other law enforcement authority initiating and conducting the investigation for the missing persons shall request the family or next of kin of the missing person to give them written consent to contact and request from the dentist or dentists of the missing person the person's dental records. [¶] (b) When a person reported missing has not been found within 30 days, the sheriff, chief of police, or other law enforcement authority initiating and conducting the investigation for the missing person shall confer with the coroner or medical examiner prior to the preparation of a missing person report. After conferring with the coroner or medical examiner, the sheriff, chief of police, or other law enforcement authority initiating and conducting the investigation for the missing person shall submit a missing person report and the dental records received pursuant to subdivision (a) to the Department of Justice on forms supplied by the department for such purpose."

DISCUSSION

I

■ The first cause of action alleges a failure to discharge a mandatory duty required by Penal Code section 11114 and seeks to impose liability pursuant to Government Code section 815.6. Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment *that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty* unless the public entity.establishes that it exercised reasonable diligence to discharge the duty." (Italics added.)

We face the problem of ferreting out legislative intent from a statute whose plain language and legislative history stubbornly refuse to yield even a hint of statutory purpose to create a *duty* toward the Sheltons or to contemplate a tortious award of damages for the injuries claimed.

Where the statute's plain language is of no assistance, we turn next to the Legislative Counsel's Digest as an aid in ascertaining the intent of the statute. (See *Morris* v. *County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606].) The digest to the 1978 enactment states in part: "Under existing law, the coroner or medical examiner is required to investigate deaths which occur without medical attendance and under other specified circumstances.

"This bill would require the *coroner or medical examiner,* when he is unable to establish the identity of the body in the investigation of a death by visual means, fingerprints, or other identifying data, to have a dentist carry out a dental examination of the body. If the coroner or medical examiner with the aid of the dental examination and other identifying findings is still unable to establish the identity of the body, such person would be required to prepare and forward the dental examination records to the Department of Justice, as specified.

"*This bill would require a sheriff, chief of police, coroner or medical examiner, or other law enforcement authority to request the family or next of kin of a missing person who has not been found within 30 days to give them written consent to contact and request the missing person's dental records from such person's dentist or dentists and to send such records to the Department of Justice, along with a missing person report, for recordkeeping, after conferring with the coroner or medical examiner, as specified.* It would require the sheriff, chief of police, coroner or medical examiner, or other law enforcement authority to report to the Department of Justice when a person reported missing is found, and would require the department to erase specified records with respect to such missing person upon receipt of such report.

"This bill would require the Department of Justice to maintain a file containing, among other things, the information from the dental records obtained from a missing person's dentist or dentists. *It would require the Department of Justice, upon receipt of dental examination records of an unidentified body submitted by a coroner or medical examiner, as discussed above, to compare such records* with those dental records of missing persons on file with the department and determine which scoring probabilities are the highest for purposes of identification, and send such information to the pertinent coroner or medical examiner, as specified." (Italics added.) As is now apparent, the digest statement totally lacks any support for the conclusion this statute was enacted to protect the Sheltons from the type of injury alleged in their first cause of action. Rather, this statute appears to have been enacted to aid the coroner in identifying bodies in the criminal investigation of a death. This statute may incidentally benefit friends, and relatives of a decedent by aiding in identification process but the statute simply does not give an inkling it was enacted to provide decedent's friends, relatives or next of kin notification of a death in a more timely fashion or contemplate a cause of action for damages for the injuries claimed here.

In the first place, no particular or specific person or body is charged with the duty; rather several departments are assigned common duties and a variety of duties. In short, a whole host of duties are assigned at various levels of government. The joint duties are interrelated and contingent upon the performance of other governmental departments. The plain words of the statute can be scrutinized in part or in whole in vain. There is no hint that plaintiffs are (1) owed a *duty* (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]) or (2) among the class of persons the statute was designed to protect, or (3) the statute was designed to protect against the particular injury caused. (Gov. Code, § 815.6.)

Secondly, not all statutes using direct obligatory language create a "mandatory duty." (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 910, fn. 6.)[3] It is arguable in this case the obligatory language creating the police duty is merely administrative instruction but we accept a heavier burden on this appeal. We assume Penal Code section 11114 imposed a "*mandatory* duty" upon the City within the meaning of Government Code section 815.6. (See *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 907-908; *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16, 18 [111 Cal.Rptr. 852]; *Bossi* v. *State of California* (1981) 119 Cal.App.3d 313 [174 Cal.Rptr. 93]; *Department of Motor Vehicles* v. *Superior Court* (1980) 105 Cal.App.3d 537 [164 Cal.Rptr. 379]; *Slagle Constr. Co.* v. *County of Contra Costa* (1977) 67 Cal.App.3d

---

[3]For a thorough and exhaustive analysis of the legislative intent behind a statute which appeared to create a mandatory duty, see *Galli* v. *State of California* (1979) 98 Cal.App.3d 662, 679-687 [159 Cal.Rptr. 721].

559 [136 Cal.Rptr. 748].) Such determination however does not resolve our issue. The *nature and extent of the duty mandated* is the difficult question here.

## II

■ In face of a total lack of judicial precedent for their cause of action and a statute which does not expressly or by rational inference contemplate their claim, the Sheltons ask this court to undertake the delicate and difficult task of fashioning a new cause of action, to find a duty owed them.

The Supreme Court (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]) has declared: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear *that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy*. [Citations.]" (Italics added.)

Assuming as an established premise the absence of a clear statutory directive, under what circumstances should a wholly new cause of action be judicially created?

In *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929, 933 [153 Cal.Rptr. 712], the court faced this precise question. The appeal court held, whether in a general negligence action or an action based on Government Code section 815.6, the ascertainment of the existence of a cause of action must begin with the determination of the presence of a *duty* owed to the plaintiff.

*Smith* explained: "Decisions as to whether to tighten or enlarge 'the circle of rights and remedies' are often phrased in terms of 'duty of care.' The existence or absence of a duty cannot be determined by mechanical or formal tests. Rather 'judicial recognition of such duty in the defendant with the consequence of his liability in negligence for its breach, is initially to be dictated or precluded by considerations of public policy.' [Citations.]" (*Id.*, at p. 935; fn. omitted.) How "duty" is to be found: " ' "[D]uty" is . . . only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (3d ed.) p. 333, quoted with approval in *Dillon* v. *Legg, supra* [68 Cal.2d 728, 734 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R. 3d 1316)].)" (*Ibid.*)[4]

---

[4]Invasion of a protected interest has replaced duty of care in the Restatement's delineation of the essentials for a negligence cause of action. (Rest. 2d Torts, § 281; see also *Peter W.* v. *San Francisco Unified School Dist.* (1976) 60 Cal.App.3d 813, 824 [131 Cal.Rptr. 854].) Thus "no matter how the question is approached, the inquiry turns upon public policy considerations." (*Smith, supra,* 90 Cal.App.3d 929, 936.)

The Supreme Court recently emphasized the obverse principle: "*Absence of duty is a particularly useful and conceptually more satisfactory rationale where* absent any 'special relationship' between the officer and the plaintiff, *the alleged tort consists merely in police nonfeasance.*" (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 202; italics added.)

### III

In *Rowland* v. *Christian, supra,* 69 Cal.2d 108, the Supreme Court enumerated the major factors to be considered in making the public policy decision: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct, and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (69 Cal.2d at p. 113.)

Where public agency duties are involved, additional elements include "the extent of the [agency's] powers, the role imposed on it by law and the limitations imposed on it by budget . . . ." (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 203.) If we utilize the various policy considerations in the fact situation here, we conclude they militate against a finding of duty.

The statute presents no clear or ascertainable standard for assessing breach of duty. There is neither express duty nor time limit to notify next of kin of the identity of a decedent. The clear duty imposed is to investigate deaths occurring under specified circumstances. The specific duty imposed upon the police is to *request consent* in order to obtain dental records and to send such records to the Department of Justice for safekeeping. This appears to be in aid of the primary purpose of the enactment as reported by the Legislative Counsel Digest.

If the statute is examined in light of the first three considerations listed by *Rowland* (a) foreseeability of harm, (b) degree of certainty of the injury, and (c) closeness of the connection between the defendants' conduct and the injury, the same conclusion results: no duty is shown.

Foreseeability, certainty of injury and closeness of the conduct and the injury can be readily recognized in cases where *duty* has been found. For example, in *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, the county's statutory duty was to compel applicants for building permits to carry workers' compensation insurance. Immediate injury could be clearly foreseen to any injured worker

with a noninsured employer. And in *Bradford* v. *State of California, supra,* 36 Cal.App.3d 16, the county had the statutorily mandated duty to record the fact that *criminal* charges (requiring registration) against plaintiff had been dismissed. The clearly foreseen injury was of *arrest* as a convicted sex offender who failed to register.

In *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27], the regulations imposed duties of maintenance, care and supervision as well as placement in foster homes of dependent children. That a dependent child might be subject to mental and physical injury if foster parents are not carefully selected and supervised is totally foreseeable, a direct and immediate injury. As the *Elton* court concluded there was a direct and rationally deducible connection between the agency's negligent placement of a child in an inappropriate foster home and the injury to the child. The *duty imposed upon the agency was clearly designed to protect against this particular type of injury.*

In *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93], contrary to State imposed eligibility standards, a welfare department coerced children under the age of 12 to perform agricultural labor as a condition for receiving county aid. In coercing a child to violate the child labor law, it was foreseeable injuries would be sustained by the child. The injuries were directly related to the violation of the duty.

The administrative rule at issue in *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577 [124 Cal.Rptr. 305], required the commission to compel bus companies operating under its authority to carry liability insurance. Lack of financial responsibility of a public carrier would cause a readily foreseeable injury.

As was said in *Williams* v. *State of California* (1976) 62 Cal.App.3d 960, 969 [133 Cal.Rptr. 539]: "A perusal of the opinions in *Elton, Ramos, Bradford,* and *Elson* discloses that in each of these cases the reviewing court concluded that *the failure to discharge the mandatory duty imposed by the enactment relied upon was the failure to perform a duty clearly designed to protect against the risk of the particular kind of injury for which damages were sought.*" (Italics added.)

In *Williams*, the rule mandating filing a final decision within 60 days from the date of request for fair hearing was held not to create statutory liability in tort for emotional pain and suffering sustained as a result in *delay* in the decision being issued. The police failure to act here is at best only in a remote causal relationship to the damage suffered. The prime cause, the direct and immediate cause of plaintiff's suffering is the murderous act of the person who killed a

beloved son. The failure to request dental records with resultant delay in identification is not even a remote, tangential, cause of this wrongful act.

If we subject the Sheltons' claim to the remaining *Rowland* tests, they fare no better. How the imposition of liability would reduce future harm is not clear. The Legislature allotted the *total sum of $37,000* to local agencies for costs incurred by this act. Budgetary restraints alone chill any thought of allocation of any significant work force to the fulfillment of plaintiffs' demands. Furthermore, many agencies are assigned the duty. No one agency or person is directed to perform a specific act. Finally, the agency involved—Westminster Police Department—is engaged in a full-time effort to maintain public order and to control crime. The apprehension and assistance in the conviction of a criminal is a prime function. Public safety and crime prevention has high priority. The possibility of a crime is always a lurking suspicion when a missing person report is filed. Search for a missing person is clearly within the ambit of police duty, yet to impose tort liability on the City for a possible failure in the investigatory process before the police focus on a crime is to impose such burden on the public fisc as to prevent the performance of the principle duties of the police.

We conclude the first claim fails to state a cause of action for this prime reason: the facts alleged do not establish a statutory *duty* owed to the class of plaintiffs.

## IV

Even if the City owed a "mandatory *duty*" to provide the Sheltons with a dental release form as required by Penal Code section 11114 and to promptly forward the records to the Department of Justice, a second and separate substantial condition is required by Government Code section 815.6 and must be fulfilled before liability attaches. ■ Section 815.6 imposes liability for failure to discharge only such "mandatory duty" as is *imposed by an enactment designed to protect against the risk of a particular kind of injury.*

This proviso was construed in *Williams* v. *State of California, supra,* 62 Cal.App.3d 960. The appeal court concluded the injury was not the particular kind of injury against which the Welfare and Institutions Code section was designed to protect. *The duty was to act within a certain time but not within a particular way by awarding benefits to plaintiff.* (See also *State of California* ex rel. *Dept. of Rehabilitation* v. *Superior Court,* 137 Cal.App.3d 282, 286 [187 Cal.Rptr. 1].)

In a most recent case (*State of California* ex rel. *Dept. of Rehabilitation* v. *Superior Court* (1982) 137 Cal.App.3d 282 [187 Cal.Rptr.1]) the appeal court (Dist. 1, Div. 4) held (1) no mandatory duty was imposed upon the State

Department of Rehabilitation by Government Code section 4455 providing that the department "shall be responsible for educating the public and working with officials of cities," etc.; and (2) assuming a mandatory duty to inform the city, etc., liability could not be imposed unless that mandatory duty was designed to protect against a particular kind of injury (a failure to provide public restroom facility).

The *Williams* and *Smith, supra,* reasoning was followed in *Novoa* v. *County of Ventura* (1982) 133 Cal.App.3d 137, 144 [183 Cal.Rptr. 736], where the duty was to locate a parent and give proper notice of juvenile court hearing. The appeal court held the damages claimed were not the type contemplated by the statute. (See also *State of California* ex rel. *Dept. of Rehabilitation* v. *Superior Court, supra,* 137 Cal.App.3d 282.) In *Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249 [158 Cal.Rptr. 395], the county had failed to require a use permit before issuing a building permit as required by an ordinance. Plaintiff's loss of the planned land use was held not to be the particular kind of injury designed to be prevented by the ordinance.

Cases which have found the statute designed to protect against the particular injury include *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], *Bradford* v. *State of California, supra,* 36 Cal.App.3d 16, and *Shakespeare* v. *County of Pasadena,* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863]. In *Sullivan* the court held the county's failure to release plaintiff after dismissal of charges (Pen. Code, § 1384) rendered it liable under Government Code section 815.6. *Bradford* held failure to register dismissal of charges (Pen. Code, § 11116.6) was "clearly designed to prevent the very type of harm which befell plaintiff—an unjustified attempt to prosecute him for failing to pay a 'penalty' from which he had been released." (*Id.,* at p. 21.) And in *Shakespeare* the mandatory duty to release on bail (Pen. Code, § 1295) was designed to protect against continued incarceration.

The Sheltons seek damages for grief and sorrow arising from delay in their son's identification. The breach of duty is failure to provide a dental release and forward the records to the Department of Justice. The reasoning of *Williams, Novoa,* and *Dept. of Rehabilitation* v. *Superior Court* and *Whitcomb* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707 [141 Cal.Rptr. 189], compels this conclusion: Government Code section 815.6 requires, before damages are compensable, that they be of the species resulting from the *risk of a particular kind of injury,* contemplated by Penal Code section 11114. This statute does not clearly proclaim nor covertly hint this particular kind of injury is compensable.[5]

---

[5]Of the 45 California cases citing Government Code section 815.6 most are concerned with whether the statutory language setting up the government's obligation creates a "mandatory duty" under section 815.6. Sometimes, however, the discussion of duty, because of its nexus to foreseeability, overlaps consideration of whether the statute is designed to protect against the particular injury.

## V

We turn to the remaining causes of action. ■ The Sheltons' second cause of action alleges negligence on the part of the City in failing to comply with Penal Code section 11114. Sheltons allege there was a "special relationship" created when the City represented the missing person report would be fully and completely investigated. Sheltons allege the City failed to diligently perform the investigation as represented, specifically by failing to obtain the decedent's dental charts for a period in excess of six months. Sheltons rely on the cases of *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr.82]; and *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], to support their cause of action.

The facts alleged in the second cause of action do not bring this case within the holdings of *Tarasoff, Mann* or *Clemente.* In *Tarasoff,* the court held due to the special relationship between a therapist and his patient, the therapist had a duty to warn a third person of the dangerous propensities of the patient. This duty arose when the patient told the therapist that he intended to kill the third person. The court held that the therapist incurred the duty to use reasonable care to protect the intended victim.

The facts of *Tarasoff* bear no resemblance to the case at bench. The *Tarasoff* court stated: "Although, as we have stated above, under the common law, as a general rule, one person owed no duty to control the conduct of another *(Richards* v. *Stanley* (1954) 43 Cal.2d 60, 65 . . . ; *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 . . . ; Rest.2d Torts (1965) § 315), nor to warn those endangered by such conduct (Rest.2d Torts, *supra,* § 314, com. c.; Prosser, Law of Torts (4th ed. 1971) § 56, p. 341), the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct (see Rest.2d Torts, *supra,* §§ 315-320). Applying this exception to the present case, we note that a relationship of defendant therapists to either Tatiana or Poddar will suffice to establish a duty of care; as explained in section 315 of the Restatement Second of Torts, a duty of care may arise from either '(a) a special relation . . . between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation . . . between the actor and the other which gives to the other a right of protection.' " *(Tarasoff,* at p. 435.)

Here there are no facts alleged to give rise to such "special relationship" between Sheltons and the City. Sheltons alleged only a failure to comply with Penal Code section 11114. *This does not create a special relationship.*

Many duties are imposed in connection with investigating a missing person report including the dental record process. The request for such police aid, or the undertaking by the police to make a report and assure appropriate action will be taken does not create a "special relationship" from which "duty" is born. The grasp of that doctrine does not reach so far. The trial court properly sustained the City's demurrer to the second cause of action.

## VI

■ The third through seventh causes of action all allege various deprivations of constitutional rights based on either the federal civil rights statutes (42 U.S.C. §§ 1983, 1985 and 1986) or the California Constitution. The demurrer to these causes of action was properly sustained. In these counts, the Sheltons contend their due process and equal protection rights were violated by the action of the Westminster Police Department. The due process claim alleges deprivation of a "liberty" interest: their right to parenthood and custody of their child, and a "property" interest: their right as taxpayers to "adequate" police services in return for taxes paid. The equal protection argument suggests the Sheltons were discriminated against because police department policy accorded fewer resources to investigation of missing person reports involving teenagers near the age of 18.[6]

Sheltons' arguments seek to turn a defective tort claim into a manifold deprivation of constitutional rights. (See *Paul* v. *Davis* (1976) 424 U.S. 693, 698-699 [47 L.Ed.2d 405, 412-413, 96 S.Ct. 1155]; *Heard* v. *LaFourche Parish School Bd.* (E.D.La. 1979) 480 F.Supp. 231, 232.) The Sheltons cite no authority for the proposition they are entitled as a matter of due process to their "tax-money's worth" in police services; the distribution of such services, in the absence of invidious discrimination, is appropriately thought to lie within the discretion of the political branches of government. (*McLaughlin* v. *Florida* (1964) 379 U.S. 184, 191-192 [13 L.Ed.2d 222, 227-228, 85 S.Ct. 283]; cf. *Hawkins* v. *Town of Shaw, Mississippi* (5th Cir. 1971) 437 F.2d 1286.) Nor do they explain how any alleged action on the part of Westminster officials deprived them of their parental rights. Carried to its illogical conclusion, the Sheltons' argument would create a constitutionally based right of action for the parent whenever a public official committed a tort against the child. (See *Baker* v. *McCollan* (1979) 443 U.S. 137, 147 [61 L.Ed. 2d 433, 443-444, 99 S.Ct. 2689].) As to the equal protection claim, the basis for the discrimination is not alleged to be suspect, and the rationale underlying the supposed disparate allocation of police resources does not appear irrational. Sheltons have not alleged a violation of their constitutional rights.

---

[6]The complaint alleges the Sheltons were told by Westminster police since Mark was nearing the age of 18, chances were he simply ran away from home and he would likely return after his 18th birthday.

## VII

██ *Rowland* v. *Christian* teaches there are two exceptions to the general principle a person is liable for injury caused by his negligence: (1) there is a statutory provision declaring an exception or (2) balancing considerations of public policy an exception is necessary. In this case Government Code section 815.6 creates a statutory exception in that it limits general rules of negligence liability. This statute says the mandatory duty in the written rule establishes the standard of care. Under ordinary negligence analysis the standard of care is reasonable care under the circumstances.

Government Code section 815.6 also declares liability is only for the particular harm caused by the failure to perform the mandatory duty. This is a more narrow rule of liability than the general consideration of foreseeability. The general rule extends liability to all harm reasonably foreseeable. These strict limitations are, in effect, a statutory exception to general negligence rules. To impose potential liability here would be contrary to *Rowland* v. *Christian* because of the statutory limitations in Government Code section 815.6 and because liability is not required for reasons of public policy.

Sheltons ask the court to create a wholly *new* cause of action without legislative or judicial guidance or approval. This nova arrives without the societal input that should precede such a great leap across the barrier reefs of foreseeability, duty and the proximate cause requirement of Government Code section 815.6. (See *Whitcombe* v. *County of Yolo, supra,* 73 Cal.App.3d 698, 707.) The Legislature, representing the public—the payor of a potentially enormous bill—should be first consulted and authorize any such expansion of tort liability.[7]

The judgment is affirmed.

Brown (Gerald), P. J., concurred.

**WIENER, J.,** Dissenting.—I agree with the majority the trial court properly rejected several of the Sheltons' theories of recovery and therefore concur in

---

[7]The 1963 report of the California Law Revision Commission, volume 4, pages 817-818, warns: "Public entities and public employees should not be liable for failure to make arrests or otherwise to enforce any law. . . . To provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community. . . . No private person is subjected to risks of this magnitude. . . . Far more persons would suffer if the government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately."

that part of the opinion affirming the order dismissing the second through the seventh causes of action. In my view, however, a police department's failure to comply with the mandatory duties of Penal Code section 11114 may give rise to liability on the facts presented. Accordingly, I would reverse the judgment of dismissal with instructions to overrule Westminster's demurrer to the Sheltons' first cause of action.

Health and Safety Code section 10254, enacted in 1978, requires coroners and medical examiners to conduct a dental examination of unidentified bodies and to forward the results of that examination to the Department of Justice. Penal Code section 11114 (see fn. 2, maj. opn., p. 613), passed as part of the same legislative package, mandates that local law enforcement officials who receive a missing person report must contact the family or next of kin of persons missing more than 30 days in order to obtain the missing person's dental records from the family dentist. These records are to be forwarded to the Department of Justice. The statute then requires the Department of Justice to keep the missing person's dental records on file so they can be checked against the coroner dental examination reports in order to aid in the identification of unidentified bodies.

The Sheltons' second amended complaint alleges the City violated a statutory standard of reasonableness as provided in Penal Code section 11114 when it failed to obtain and forward to the Department of Justice a copy of Mark Shelton's dental records. The Sheltons contend but for this omission, Mark's body would have been identified much sooner than it was since the San Bernardino coroner had furnished the Department of Justice with a dental exam report on Mark Shelton's body. Westminster responds that a city's failure to comply with a statute gives rise to liability only if the statute was "designed to protect against the risk of [the] particular kind of injury" which the plaintiff suffered. (Gov. Code, § 815.6.)[1] The Legislature's purpose in enacting Penal Code section 11114 thus becomes the critical question. If the statute were designed in whole or in part to benefit the families of victims by facilitating the prompt identification of unidentified bodies, the Sheltons have stated a cause of action under Government Code section 815.6. If, on the other hand, the legislation was passed for reasons totally extraneous to concerns about the victim's family or loved ones, it will not support an action for the type of injury alleged by the Sheltons in this case.

In analyzing the legislative purposes underlying Penal Code section 11114, several principles of general application to cases involving the scope and extent

[1]The full text of Government Code section 815.6 reads as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

of governmental immunity must be kept in mind. The California Tort Claims Act is structured such that the liability of a public entity must be based on a specific statute authorizing liability. (Gov. Code, § 815.) Thus, in a statutory sense, immunity is the rule and liability is the exception. On the other hand, common law tort principles which guide our interpretational path suggest that ". . . when there is negligence, the rule is liability, immunity is the exception." (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457], mod. *sub nom. Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325].) These semantically opposite conclusions are not as functionally inconsistent as they may first appear. While the Tort Claims Act mandates that any imposition of governmental liability be pegged to some specific statutory authorization, it does not require that such authorizations, when they appear, must be interpreted narrowly. (See Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.42, p. 94.)

Westminster argues the sole legislative intent in enacting Penal Code section 11114 was to aid the coroner in identifying bodies for the purpose of criminal investigation. The majority concludes "there is no hint that plaintiffs are (1) owed a *duty* [citation] or (2) among the class of persons the statute was designed to protect, or (3) the statute was designed to protect against the particular injury caused. [Citation.]" (Maj. opn., at p. 615, italics in original.) In respectfully disagreeing with that categorical pronouncement, I doubt I am being merely oversensitive to the tragedy of this case. To be sure the aim of the statute is to facilitate identification of dead bodies, with one result being the investigation of criminal homicides. But the mandatory duties imposed by Penal Code section 11114 are not limited to cases involving the bodies of individuals who die of unnatural causes or under suspicious circumstances.

The Legislature would thus appear to have considered other factors in adopting Penal Code section 11114. One result of facilitated identification which comes quickly to mind is that the previously unidentified bodies may be removed from county medical facilities and returned to the victim's family for proper disposition. The Legislature doubtless was aware that for cultural and religious reasons, the internment or other disposition of the deceased's body is an extremely important emotional catharsis for the family and friends of the deceased. Moreover, the uncertainty which attends a presumed but unconfirmed death is nearly always an emotionally wrenching experience for loved ones.[2] One need only look to the years of continuing national concern over servicemen missing in action in the Vietnam War as demonstrating that such

---

[2]In the case of the Sheltons, for instance, the complaint alleges the family incurred substantial expenses pursuing private investigations and searches during the eight-month period in hopes of determining the fate of their son.

perceptions are almost a definitional attribute of American if not human culture.

Past cases indicate numerous examples of statutes enacted for multiple concurrent purposes. (See, e.g., *Courtell* v. *McEachen* (1959) 51 Cal.2d 448, 459 [334 P.2d 870]; *Cappa* v. *Oscar C. Holmes, Inc.* (1972) 25 Cal.App.3d 978, 982-983 [102 Cal.Rptr. 207]; *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897, 903 [93 Cal.Rptr.530].) I think it is likely the Legislature was motivated by similar multiple purposes in enacting Penal Code section 11114. Where the legislative history is not definitive, I believe legislative intent may be gleaned by looking to the reasons which would motivate a reasonable legislator to enact the statute. As I have noted, the benefits conferred on the immediate families of victims whose bodies would otherwise remain unidentified is a more than reasonably foreseeable result of the statute. This conclusion is supported by the sound public policy of broadly interpreting statutes authorizing the liability of public entities. (See *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d at p. 219; see *ante,* p. 625.) I therefore would hold the Sheltons have stated a cause of action under Government Code section 815.6 based on Westminster's alleged failure to perform the mandatory duty imposed by Penal Code section 11114, a statute which was designed at least in part to facilitate the identification of bodies for the benefit of the immediate families of the victims.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1983. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.