[Civ. No. 66916. Second Dist., Div. Five. Dec. 22, 1983.]

LOREN BOCK, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Buckley & Webb and Marguerite M. Buckley for Plaintiff and Appellant.

John H. Larson, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and John W. McCauley, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**FEINERMAN, P. J.—** ▮ Plaintiff, Loren Bock (Bock), appeals from an order of dismissal entered after the demurrer by defendant, County of Los Angeles (County), to her first amended complaint was sustained without leave to amend.

▮ In reviewing an appeal from an order of dismissal following the sustaining of a demurrer, the court must treat all contentions as true and must assume that all facts pled can be proven. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

The plaintiff's complaint alleges the following facts: She states that her husband, Alton Bock, was the victim of a hit and run accident on June 14, 1980. He was taken to a hospital and died there within a few hours. Alton Bock's body was then transported to the Los Angeles County morgue. The State of California identified the decedent as Alton Bock on or about June 23, 1980, and notified defendants County and City of Los Angeles. Plaintiff alleges, "Defendant County negligently failed to identify the remains of decedent Alton Bock, and failed to promptly notify the plaintiff of their custody and identification." Bock claims she was in constant contact with the city and county during the period between June 17, 1980 and July 15, 1980, the date on which decedent's remains were released to her. She states she provided information, including dental records, and requested information in an effort to determine the whereabouts of her husband.

Bock's complaint attempts to set forth two causes of action. First, as a result of defendant's negligence, plaintiff claims she suffered severe mental and emotional distress and consequent physical illness. Second, she alleges that defendant negligently breached its duties of due care and reasonable behavior toward her in the investigation and search for her husband, causing her severe mental and emotional distress and consequent physical illness. This purported second cause of action, breach of a duty of due care to plaintiff, is a necessary element of plaintiff's first cause of action for negligent infliction of emotional distress, and we shall therefore discuss both causes of action together.

California courts have allowed recovery for negligent infliction of emotional distress when the tortfeasor has breached a duty which was owed to the plaintiff. In *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], defendant hospital incorrectly diagnosed plaintiff's wife as having syphilis. It was held that defendant doctors and hospital not only breached a duty of care to their patient, but also to her spouse as well. The court ruled that it was foresee-

able that a diagnosis of a venereal disease would produce marital discord and resultant emotional distress to a married patient's spouse. (*Id.,* at p. 923.) In *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470], plaintiff was found to have stated a cause of action for negligent infliction of emotional distress against a title company which breached its duty to discover and list all matters of public record regarding property purchased by plaintiff and then refused to defend plaintiff's title. This duty arose when the title insurance company issued a preliminary title report and a policy of title insurance to plaintiff. In *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], plaintiff was allowed to recover for mental distress which resulted from an insurance company's breach of the implied covenant of good faith and fair dealing contained in its contract of insurance. The company had breached its resultant duty to allow a reasonable settlement of a claim against plaintiff.

██ Plaintiff cites sections of the California Government, Health and Safety, and Penal Codes which she claims create a statutory duty in the coroner to identify decedent and notify plaintiff that he had custody of the remains. ██ "[A] presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 763 [91 Cal.Rptr. 745, 478 P.2d 465].)

Government Code section 27463 states: "The coroner shall keep an official register, labeled 'Coroner's Register,' with pages numbered, indexed and bound, in which he shall enter: [¶] (a) The name and any aliases of the deceased, when known, including such description as may be sufficient for identification and which may, in his discretion, include fingerprint records. [¶] (b) A narrative summary of the circumstances leading to and surrounding the death, together with names and addresses of any witnesses to such events. [¶] (c) The property taken from the person or premises of the deceased by the coroner or by any other law enforcement agency or officer. [¶] (d) The disposition of any property or moneys so taken. [¶] (e) The cause of death, when known, with reference or direction to the detailed medical reports upon which decision as to cause of death has been based. [¶] (f) Information as to disposition of the remains. [¶] (g) Persons notified of the death, together with a notation of any unsuccessful attempts at notification." Government Code section 27463.5 empowers the coroner to keep an official file containing all of the above information in lieu of the register.

██ This section merely mandates the listing of decedent's name *when known*—it does not impose a duty upon the coroner to identify the decedent.

The statute mandates that the coroner keep a record of those persons he has notified or attempted to notify. It places no duty upon the coroner to notify decedent's next of kin. The statute authorizes only a process of record keeping to facilitate the State's interest in keeping track of its citizens. The coroner must keep records of the bodies of which he has custody, just as the state registrar of vital statistics and local registrars must record births, marriages, divorces and deaths.

Government Code section 27471 directs the coroner, when he takes custody of a body, to make a reasonable attempt to locate the family within 24 hours. At the end of 24 hours he may embalm the body or authorize the embalming by a mortician. ■ This section clearly pertains only to the coroner's authority to order embalming of a body. Prior to its amendment in 1977, this section allowed the coroner to embalm the body and collect a fee from the person entitled to its custody without first attempting to notify that person. This section creates no duty to identify the body. (We note that in the instant case, plaintiff does not claim that the coroner was negligent in not identifying decedent's body within 24 hours; nor does she appear to be making any claim for damages for the period from June 14 to June 23, 1980, when the county coroner received the identification information from the state.)

Health and Safety Code section 10254 requires the coroner, if he is unable to establish the identity of a body by visual means, fingerprints, or other identifying data, to have a qualified dentist perform a dental examination of the body and, if the body remains unidentified, to forward the dental examination records to the Department of Justice. Penal Code section 11113 requires the coroner to furnish the Department of Justice with fingerprints, descriptions, and other identifying data of "all deceased persons whose deaths are in classifications requiring inquiry by the coroner where the coroner is not satisfied with the decedent's identification." ■ These sections implement a method of nationwide identification of deceased persons whom the local coroner has been unable to identify. These statutes further expand the coroner's record-keeping duties. Beyond these specific duties, they create no general duty to identify deceased persons or to notify their families. Health and Safety Code sections 7100 and 7102 establish the right to control the disposition of deceased persons in the surviving spouse, if the decedent is survived by a spouse. Such spouse is entitled to custody of the remains after the coroner has completed any required investigation. Apparently decedent's remains were released to the surviving spouse on or about July 15, 1980.

Government Code section 815.6 provides in pertinent part as follows: "Where a public entity is under a mandatory duty imposed by an enactment

that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." In *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], the failure of the Superior Court to issue a release order following dismissal of two felony counts resulted in plaintiff's confinement in jail after he completed service of his sentence for drunk driving. The court held that the county's failure to release plaintiff after dismissal of all charges against him, as mandated by Penal Code section 1384, renders it directly liable under Government Code section 815.6. Another case where liability was found is *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852]. There, the state's failure to make appropriate record entries of dismissal of charges against plaintiff resulted in plaintiff's arrest for failure to register as a sex offender.

In the case at bench, we do not find that the statutes empowering the coroner to keep and transmit various records were designed to protect against the risk of the particular kind of injuries alleged in the complaint. (*Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 620 [188 Cal.Rptr. 205]; *Novoa* v. *County of Ventura* (1982) 133 Cal.App.3d 137, 144-145 [183 Cal.Rptr. 736]; *Smith* v. *Alameda County Social Services Agency* (1979) 90 Cal.App.3d 929, 934-941 [153 Cal.Rptr. 712]; *Williams* v. *State of California* (1976) 62 Cal.App.3d 960, 970 [133 Cal.Rptr. 539].)

In *Shelton, supra,* 138 Cal.App.3d 610, the trial court sustained a general demurrer without leave to amend in an action against the City of Westminster and police officers brought by the parents of an apparent homicide victim of the so-called "Freeway Killers." The parents sought damages for grief and sorrow, as well as investigation expenses, arising out of defendants' delay in providing them with a state form authorizing the release of dental records of their son, who had been reported missing and whose body was not identified for several months. The parents alleged a failure to discharge a mandatory duty required under Penal Code section 11114, which requires law enforcement officers to provide a dental release and forward the records to the Department of Justice. The court held the parents failed to state a cause of action under Government Code section 815.6, despite defendants' failure to comply with Penal Code section 11114, since the facts alleged did not establish a statutory duty owed to the class of persons that would include the parents. The court stated that Penal Code section 11114 was enacted solely to aid the coroner in criminal investigations.

Nevertheless, as the Supreme Court clearly stated in *Williams* v. *State of California* (1983) 34 Cal.3d 18 at page 24 [192 Cal.Rptr. 233, 664

P.2d 137], ". . . when the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization. [Citations.] [¶] The breach of duty may be an affirmative act which places the person in peril or increases the risk of harm . . . . The negligence may also constitute an omission or failure to act, as in *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938 [41 Cal.Rptr. 508], where a deputy sheriff promised to warn a decedent if a prisoner, who had made threats on her life, was re- · leased. The county was held liable when the sheriff failed to warn."

There are other cases in which governmental liability was established despite the fact there was initially no liability on the part of the government for its acts or omissions. In all of these cases, the *conduct* of the public entity or its employees, in a situation of dependency, has created a special relationship that justified detrimental reliance by the plaintiff on the public entity's statement or promises. (See *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453]; *Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 748-752 [84 Cal.Rptr. 257]; *Sava* v. *Fuller* (1967) 249 Cal.App.2d 281 [57 Cal.Rptr. 312].) "The common theme running through these decisions is the voluntary assumption by the public entity or official of a duty toward the injured party." (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 10 [120 Cal.Rptr. 5].)

In the instant case the complaint alleges that plaintiff's husband's body was identified by the State of California on June 23, 1980, and that this identification data was given to the County of Los Angeles that same day. Nonetheless, the county did not notify the plaintiff her husband was dead and deliver his body to her until July 15, 1980. During the period of time between June 23, 1980, and July 15, 1980, the plaintiff alleges she was required to identify other corpses, bring in her husband's dental charts, and on one occasion "was required to wait three hours before she was advised that there was nothing more for her to do." As the dissenting opinion in *Shelton* v. *City of Westminster, supra,* 138 Cal.App.3d 610, 625 pointed out, "for cultural and religious reasons, the internment or other disposition of the deceased's body is an extremely important emotional catharsis for the family and friends of the deceased. Moreover, the uncertainty which attends a presumed but unconfirmed death is nearly always an emotionally wrenching experience for loved ones."

 Under the allegations of the complaint, it can be implied that the county undertook to assist the plaintiff. If it did so, it was obligated to act in a careful and reasonably diligent manner in carrying out the duties it assumed.

From the preliminary smoke signals emanating from the plaintiff's pleadings, it appears she may be able to spell out a cause of action for breach of duty arising out of a special relationship. However, as the first amended complaint is presently structured, it does not state a cause of action. There is no allegation of the requisite factor to a finding of a special relationship, namely plaintiff's detrimental reliance upon the coroner's conduct. There is no allegation that the plaintiff's position was worsened by the defendant's conduct.

Fairness, however, requires that the plaintiff be given the opportunity to again amend her complaint.

The judgment is reversed, with directions to permit plaintiff to file a second amended complaint.

Stephens, J., and Hastings, J., concurred.