[No. B102701. Second Dist., Div. One. Oct. 22, 1996.]

ROBERT DAVILA et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

138

**COUNSEL**

Michael H. Kapland for Plaintiffs and Appellants.

Nelson & Fulton, Henry Patrick Nelson and Amber A. Logan for Defendants and Respondents.

**OPINION**

**VOGEL (Miriam A.), J.**—The issue in this case is whether a coroner owes a duty to a decedent's children to attempt with reasonable diligence to notify the person responsible for the interment of the decedent's remains before disposing of the body. We hold that he does.

### FACTS

Robert Davila and Angelina Williamson (collectively Davila) sued the County of Los Angeles, the Los Angeles County Sheriff's Department and

the Los Angeles County Coroner (collectively the Coroner) for damages on a negligence theory, alleging the following facts: On July 11, 1993, their father, Freddie Davila, was found dead in a car parked on Paramount Boulevard, in the City of Paramount. Decedent was transported to a hospital, where he was formally pronounced dead, but the Coroner failed "to make an adequate or reasonable attempt to locate any relatives" and, on August 11, decedent's body was cremated. Decedent had told Davila that he was going to take an extended trip and it was thus not until December 1993, that Davila became concerned that he hadn't heard from his father, at which time Davila filed a missing person's report and then learned that his father had died and that his body had been cremated. As a result, Davila suffered emotional distress.

The Coroner answered, and then moved for summary judgment on the ground that he owed no duty to Davila. In his separate statement of undisputed facts, the Coroner recounted the discovery of the body, the fact that the body was held by the Coroner's office for 30 days, that no one (including Davila) contacted the Coroner's office regarding decedent between July 11 and August 11, 1993, that the body was cremated on August 11, in conformance with the provisions of Health and Safety Code section 7104, and that "[t]he Los Angeles County Department of the Coroner attempts to locate the next-of-kin to prevent the County of Los Angeles from incurring the costs of disposition." Based on these facts, the Coroner asserted that, as a matter of law, he owed no duty to Davila to locate or notify him that his father had died.

Davila opposed the motion, admitting all of the facts relied on by the Coroner except his assertion that his disposition of the body was in compliance with Health and Safety Code section 7104, and asserting that, under the circumstances of this case, the Coroner was obligated by statute to "diligently attempt[] to notify" the next of kin. (Health & Saf. Code, § 7104.1.) Davila supported his opposition with evidence that he had been able to recover his father's personal effects from the Coroner's office, and had found within those effects his father's Social Security card and an identification card stating, "In case [of] accident please notify Rev. Robert Davila. Home 818- 814-4620. Work 213-603-6226" (Davila's then current telephone numbers). In decedent's car (recovered from the salvage yard where the Coroner had it towed), Davila found an address book with Davila's telephone numbers and address (along with phone numbers and addresses of other relatives).

The motion was granted (the trial court found no duty was owed), and Davila appeals from the judgment thereafter entered.

## DISCUSSION

■ Davila contends the Coroner's office owed him a duty to make reasonable efforts to locate decedent's next of kin. We agree.

Government Code section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." ■ For liability to attach under this statute, (1) there must be an enactment imposing a mandatory duty, (2) the enactment must be intended to protect against the risk of the kind of injury suffered by the individual asserting liability, and (3) the breach of the duty must be the cause of the injury suffered. (*Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 848 [225 Cal.Rptr. 830].)

### I.

### *Enactment Imposing a Mandatory Duty*

■ In our case, the existence of a mandatory duty is established by Government Code section 27471, subdivision (a): "Whenever the coroner takes custody of a dead body pursuant to law, he or she *shall make a reasonable attempt to locate the family*."[1] (Italics added.) The same duty is reflected in Health and Safety Code sections 7104 (when the person with the duty of interment "can not *after reasonable diligence* be found . . . the coroner shall inter the remains . . . .") and 7104.1 (if within "30 days after the coroner notifies *or diligently attempts to notify the person responsible for the interment* . . . the person fails, refuses, or neglects to inter the remains, the coroner may inter the remains"). (Italics added.) Quite clearly, the coroner had a mandatory duty to make a reasonable attempt to locate decedent's family. (Cf. *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 906-907 [136 Cal.Rptr. 251, 559 P.2d 606].)

To avoid this result, the Coroner contends *Bock* v. *County of Los Angeles* (1983) 150 Cal.App.3d 65 [197 Cal.Rptr. 470] compels the conclusion that no mandatory duty exists. Not so. In *Bock*, where a widow sued the county because the coroner had failed to promptly identify her husband's body and notify her of his death, Division Five of our court held that the coroner's "record-keeping" responsibilities did not create a general duty to identify a

---

[1] Under Government Code section 14, "[s]hall" is mandatory.

decedent or notify his family.[2] (*Id.* at pp. 69-70.) At the time *Bock* was decided, however, Government Code section 27471 required the coroner to "make a reasonable attempt to locate the family [of a dead body] *within 24 hours*" and provided that, "[a]t the end of 24 hours," the coroner "may embalm the body. . . ." (*Bock* v. *County of Los Angeles, supra,* 150 Cal.App.3d at p. 70, italics added.) In 1984, the Legislature amended the statute, deleted the 24-hour time period, and left the unqualified language requiring the coroner to "make a reasonable attempt to locate the family." In short, *Bock* is no longer dispositive on this point.

## II.

### Enactment Intended to Protect Against This Kind of Injury

In *Bock*, Division Five also held that the second requirement of Government Code section 815.6—that the enactment was intended to protect against the risk of the kind of injury suffered by the plaintiff—was not satisfied because "the statutes empowering the coroner to keep and transmit various records were [not] designed to protect against the risk of the particular kind of injuries alleged . . . ." (*Bock* v. *County of Los Angeles, supra,* 150 Cal.App.3d at p. 71.) As Davila points out, however, *Bock* did not consider Health and Safety Code sections 7104 (enacted in 1939) and 7104.1 (enacted in 1992, nine years after *Bock* was decided).

Sections 7104 and 7104.1 are part of chapter 3 ("Custody, and Duty of Interment") of division 7 ("Dead Bodies") of the Health and Safety Code. Section 7104 of the Health and Safety Code provides as follows: "(a) When no provision is made by the decedent, or where the estate is insufficient to provide for interment and the duty of interment does not devolve upon any other person residing in the state or *if such person can not after reasonable diligence be found* within the state the person who has custody of the remains may require the coroner of the county where the decedent resided at time of death to take possession of the remains and the coroner shall inter the remains in the manner provided for the interment of indigent dead. [¶] (b) A county exercising jurisdiction over the death of an individual pursuant to Section 27491 [covering the coroner's duty to inquire into the cause of all violent, sudden or unusual deaths], or who assumes jurisdiction pursuant to Section 27491.55 [coroner's right to delegate inquiry to other agencies] of the Government Code, shall be responsible for the disposition of the remains

---

[2]Division Five nevertheless concluded that because the coroner "undertook to assist" the widow, he had assumed a duty to do so in a reasonably diligent manner. (*Bock* v. *County of Los Angeles, supra,* 150 Cal.App.3d at pp. 71-72.)

of that decedent. If the decedent is an indigent, the costs associated with disposition of the remains shall be borne by the county exercising jurisdiction." (Italics added.) Health and Safety Code section 7104.1, which was enacted in 1992 (Stats. 1992, ch. 1020, § 3.3), provides as follows: "If, within 30 days after the coroner *notifies or diligently attempts to notify the person responsible for the interment or inurnment of a decedent's remains which are in the possession of the coroner,* the person fails, refuses, or neglects to inter the remains, the coroner may inter the remains. The coroner may recover any expenses of the interment from the responsible person." (Italics added.)

Read together, these statutes provide that when no one is responsible for interment of a decedent, the coroner must assume that responsibility and its attendant costs. When a responsible person exists but refuses to inter the remains, the coroner must do so but may recover his expenses from the responsible party. According to the Coroner, this means the "kind of injury" the statutes were meant to prevent was the "incurring [of] costs [by the County] of interment of . . . unclaimed decedents." We disagree.

While the recovery of interment costs may be *one* purpose of Health and Safety Code section 7104.1, just as the recovery of embalming costs may be *one* purpose of Government Code section 27471 (*Bock* v. *County of Los Angeles, supra,* 150 Cal.App.3d at p. 70), the statutes exist for other purposes as well and are designed to prevent other injuries. As has been noted, the Legislature is "aware that for cultural and religious reasons, the [interment] or other disposition of the deceased's body is an extremely important emotional catharsis for the family and friends of the deceased." (*Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 625 [188 Cal.Rptr. 205] (dis. opn. of Wiener, J.).) To this end, Health and Safety Code section 7100 provides that "[t]he *right to control the disposition of the remains of a deceased person, including the location and conditions of interment,* unless other directions have been given by the decedent, *vests in,* and the duty of interment and the liability for the reasonable costs of interment of the remains devolves upon the following in the order named: [¶] (1) [t]he surviving spouse[;] [¶] (2) [*t*]*he surviving child or children of the decedent* . . . ." (Italics added.)

Had Division Five considered these points, *Bock* might have been decided differently. With the addition of Health and Safety Code section 7104.1, however, *Bock*'s views of the purpose of the statutory scheme are no longer controlling. We are satisfied that, today, the rights granted by the several statutes discussed above would have no meaning unless they are read to

impose upon the Coroner a duty to act with reasonable diligence in attempting to identify a body placed in his custody and then to attempt with reasonable diligence to locate some family member.

## III.

### *The Breach Must Be the Cause of the Injury*

For present purposes, it is undisputed that, assuming a duty exists in this case, that duty was breached and the breach was the cause of the injury suffered by Davila. Having found that a duty does exist and that it is owed to Davila, it follows that summary judgment must be reversed. At trial, the issues will be whether the Coroner acted with reasonable diligence in attempting to identify the decedent's body (such as by looking at his personal effects) and in attempting to locate a family member (such as by picking up the telephone and calling Davila).

### DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to vacate the summary judgment and set the matter for trial. Plaintiffs are awarded their costs of appeal.

Ortega, Acting P. J., and Masterson, J., concurred.