[No. A127285. First Dist., Div. Four. May 25, 2010.]

PETER A. BENSON, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
ISOLINA PICON, Real Party in Interest.

[No. A127305. First Dist., Div. Four. May 25, 2010.]

COUNTY OF SAN MATEO et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
ISOLINA PICON, Real Party in Interest.

COUNSEL

Hassard Bonnington, Joseph C. Gharrity and B. Thomas French for Petitioner Peter A. Benson.

Michael P. Murphy, County Counsel, John D. Nibbelin, David A. Silberman and Glenn M. Levy, Deputy County Counsel, for Petitioners County of San Mateo et al.

Pacific West Law Group and Gregory M. Abrams for National Association of Medical Examiners and California Society of Pathologists as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Law Offices of Ayanna L. Jenkins Toney and Ayanna L. Jenkins Toney for Real Party in Interest.

## OPINION

**REARDON, J.**—A county coroner conducting an inquiry into cause of death has no duty to obtain consent from next of kin before retaining a part of the decedent's body to determine cause of death, or for scientific investigation or coroner training. We therefore grant the petitions for extraordinary relief filed by defendants in the underlying action and direct the trial court to enter judgment for defendants.

## BACKGROUND

Twenty-three-year-old Nicholas Picon died unexpectedly at home. On October 26, 2006, defendant Peter A. Benson, M.D., a forensic pathologist, performed a postmortem exam on behalf of the San Mateo County Coroner's Office. Dr. Benson had performed postmortem exams under contract with the county since 1968.

Dr. Benson found a "structural abnormality" in Nicholas Picon's heart during the course of the postmortem exam. Dr. Benson decided to retain the heart for further examination. He also ordered toxicology tests.

Three days later, Dr. Benson reexamined the heart. He took tissue samples and sent them to an outside laboratory for preparation of biology slides.

By November 9, 2006, Dr. Benson had received the biology slides and the toxicology test results ("negative for drugs and medication"). Dr. Benson concluded the cause of death was "probable cardiac dysrhythmia due to intramural tunneling of the left anterior descending coronary artery." Dr. Benson, however, intended to send the heart to a heart pathology specialist at Stanford University to confirm his findings.

Meanwhile, the coroner's office had released Nicholas Picon's body, and his mother, plaintiff Isolina Picon (Picon), buried his remains on October 30, 2006. According to Picon, no one from the coroner's office informed her that her son's heart had been retained. When she learned the coroner's office had retained the heart, she asked for its return. The coroner returned the heart on November 20 or 21, 2006.

Picon sued the County of San Mateo, County Coroner Robert Foucrault, and Dr. Benson. She purported to state causes of action for (1) "denial of quasiproperty right to control the remains of a deceased person," and (2) negligence. Picon alleged that Dr. Benson's retention of the heart was "unauthorized." She believed Dr. Benson had retained the heart for his own "self serving interest" and so that it could be released to Stanford University. Her amended complaint states Dr. Benson was "intrigued by the rarity of the heart condition that ultimately led to [her son's] untimely death." Foucrault was to blame for allowing Dr. Benson "unfettered freedom." Thus Foucrault (and presumably the county, too) "became vicariously liable for Dr. Benson's actions."

Defendants moved for summary judgment. Foucrault and the county argued that retention of the heart was authorized by state law, and that they were also immune from liability for discretionary acts under the applicable provisions of Government Code[1] sections 815 and 820.2. Dr. Benson similarly argued his actions were authorized by state law, and that he had no duty to obtain Picon's consent before retaining her son's heart.

In opposition to defendants' motions, Picon submitted an expert declaration that cast doubt on Dr. Benson's conclusions and his need to retain the heart. Judy Melinek, M.D., a forensic pathologist, believed Nicholas Picon did not die from coronary artery tunneling. In her opinion a viral infection that had spread to his heart had led to his death. Dr. Melinek did not "understand why the entire heart organ was retained in this case." She opined, "There was no clinical diagnostic reason that I could see that would necessitate the retention of Nicholas Picon's entire heart organ."

The trial court denied defendants' motions, finding a disputed issue of fact as to why defendants had retained the heart. The trial court concluded: A reasonable trier of fact, based upon the conclusions of Dr. Melinek, could infer that Dr. Benson did not need the entire heart organ to ascertain cause of death, and thus that there were other reasons why the heart was retained.

## DISCUSSION

*Standard of Review*

An order denying a motion for summary judgment may be reviewed by a petition for peremptory writ. (Code Civ. Proc., § 437c, subd. (m)(1).) The

---

[1] All code section references are to the Government Code unless otherwise noted.

standard of review is the same regardless of whether the trial court grants or denies a summary judgment motion. "Rulings on such motions are examined de novo." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

"We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, if the movant has met its burden, we consider whether the opposition raised triable issues of fact." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939–940 [51 Cal.Rptr.3d 1], italics omitted; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

*The Coroner's Duties*

■ The coroner's many duties are enumerated at section 27460 et seq. One of the coroner's principal duties is of course to inquire into and determine the cause of death in appropriate cases. (See § 27491.) There is no dispute here that the death of Nicholas Picon warranted an inquiry.

To perform this inquiry, the coroner may order a postmortem examination or autopsy. (§ 27491.4, subd. (a).)[2] The coroner may "make or cause to be made an analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body." (§ 27491.4, subd. (a).) The coroner is statutorily authorized to retain tissues as necessary or advisable to the inquiry. (*Ibid.*; see also Health & Saf. Code, § 7102 [coroner entitled to custody of remains of person whose death is subject of investigation until conclusion of autopsy or

---

[2] Section 27491.4, subdivision (a) provides: "For purposes of inquiry the coroner shall, within 24 hours or as soon as feasible thereafter, where the suspected cause of death is sudden infant death syndrome and, in all other cases, the coroner may, in his or her discretion, take possession of the body, which shall include the authority to exhume the body, order it removed to a convenient place, and make or cause to be made a postmortem examination or autopsy thereon, and make or cause to be made an analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body. The detailed medical findings resulting from an inspection of the body or autopsy by an examining physician shall be either reduced to writing or permanently preserved on recording discs or other similar recording media, shall include all positive and negative findings pertinent to establishing the cause of death in accordance with medicolegal practice and this, along with the written opinions and conclusions of the examining physician, shall be included in the coroner's record of the death. The coroner shall have the right to retain only those tissues of the body removed at the time of the autopsy as may, in his or her opinion, be necessary or advisable to the inquiry into the case, or for the verification of his or her findings. No person may be present during the performance of a coroner's autopsy without the express consent of the coroner."

medical investigation].)[3] In addition, the coroner may retain parts of the body that, in the opinion of the coroner, may be necessary or advisable for scientific investigation and training. (§ 27491.45, subd. (a)(1).)[4] The coroner may employ outside laboratories, hospitals, or research institutions to conduct the coroner's scientific investigation or training. (§ 27491.45, subd. (a)(1).) The coroner may release parts of the body to third parties for noncoroner training, educational, and research purposes, but in that case the coroner must obtain consent under the methods described in the Uniform Anatomical Gift Act. (Health & Saf. Code, § 7150 et seq.)

To fulfill his or her duties, the coroner may "summon a surgeon or physician to inspect the body or hold a post mortem examination or a chemist to make an analysis of the stomach or the tissues of the deceased and give a professional opinion as to the cause of the death." (§ 27499.) When there is a question as to the cause of death, the coroner acts "within his authority in ordering an inquest held, and in authorizing his autopsy surgeon to proceed in the usual manner." (*Huntly v. Zurich General A. & L. Ins. Co.* (1929) 100 Cal.App. 201, 214 [280 P. 163].)

### Defendants' Contentions

Foucrault and the county point out that the Government Code grants substantial discretion to the coroner in performing the duties of his office, including discretion to retain tissues and parts of the body. They therefore rely on section 820.2, which provides a public employee is not liable for injuries resulting from an exercise of discretion. Alternatively, Foucrault and the county argue that neither Dr. Melinek's declaration nor any of Picon's other factual assertions created a triable issue of fact. In their opinion, there was no evidence to support an inference that Dr. Benson retained the heart for some improper reason.

---

[3] There are specific statutory provisions regarding the removal of the pituitary glands (§ 27491.46) and corneal eye tissue (§ 27491.47). They are not at issue here.

[4] Section 27491.45, subdivision (a)(1) provides: "The coroner shall have the right to retain parts of the body, as defined in subdivision (g) of Section 7150.1 of the Health and Safety Code, removed at the time of autopsy or acquired during a coroner's investigation as may, in the opinion of the coroner, be necessary or advisable for scientific investigation and training. The coroner may employ or use outside laboratories, hospitals, or research institutions in the conduct of the coroner's scientific investigation or training."

Note section 27491.45 does not reflect the Legislature's repeal of Health and Safety Code section 7150.1 when it revised the Uniform Anatomical Gift Act (Health & Saf. Code, § 7150 et seq.) in 2007. (See Stats. 2007, ch. 629, § 1.) The Act's definition of parts of the body now appears in Health and Safety Code section 7150.10, subdivision (a)(18), and includes organs.

Dr. Benson's arguments overlap to a great degree with Foucrault and the county's arguments, but rather than rely on statutory immunity, he simply argues he had no duty to obtain Picon's consent to retain her son's heart. He asserts any limited quasi-property right Picon might have had in her son's remains cannot be expanded to conflict with statutes (§§ 27491.4, 27491.45) permitting the coroner to retain organs and tissues collected during an autopsy. Finally, Dr. Benson also contends Picon's claims against him are barred by the applicable statute of limitations.

■ Although Foucrault and the county's points are well taken, we believe the most straightforward explanation here is that Picon never established that defendants owed her a duty to obtain her consent before retaining her son's heart.

*Duty of Care*

■ "Whether a defendant owes a duty of care is a question of law. A defendant may be liable in tort for negligently inflicting emotional distress on persons to whom the defendant owes a duty of care. That duty can have three alternative origins: (1) a duty imposed on the defendant by law, (2) a duty assumed by the defendant, or (3) a duty arising out of a preexisting relationship between plaintiff and defendant." (*Aguirre-Alvarez v. Regents of University of California* (1998) 67 Cal.App.4th 1058, 1063 [79 Cal.Rptr.2d 580]; see also § 815, subd. (a) [public entity not liable for injury except as otherwise provided by statute].)

■ Picon appears to rely on a duty imposed by law. Paradoxically, however, she relies on the very law—sections 27491.4 and 27491.45—that allows defendants to retain tissues and parts of the body. Those sections do not require consent from next of kin to do so. Consent is required only when the coroner releases parts of the body to third persons for noncoroner purposes. (§ 27491.45, subd. (a)(2).)

In light of the specific statutory authorization to retain parts of the body removed at an autopsy, it is difficult to discern any duty defendants owed to Picon before making the decision to retain her son's heart in this case. Picon cites little in the way of legal authority or facts to persuade us otherwise. She does attempt to parse the language of sections 27491.4 and 27491.45 to support her case. We will discuss her arguments point by point.

*Dr. Benson's Status As an Independent Contractor*

Picon attaches great significance to the fact Dr. Benson is an independent contractor. According to Picon, "Petitioner's [*sic*] are not immune from

liability based on the fact that Dr. Benson is an independent contractor and his actions were not authorized by California Government Code section 27491.4 or 27491.45(a)(1) & (2)." She points out those sections grant only the "coroner" the discretion to retain tissues or parts of the body; thus, Dr. Benson did not have the authority to make the decision to retain her son's heart.

Picon appears to be suggesting a government officer cannot act through, or delegate authority to, an expert. Outside of sections 27491.4 and 27491.45 themselves, she cites no authority for this surprising proposition.

■ The law does not presume the coroner will personally conduct postmortem examinations. The coroner, in his or her discretion, may make or "cause to be made" a postmortem examination. (§ 27491.4, subd. (a).) The coroner may summon physicians to conduct postmortem exams (§ 27499), and may employ outside laboratories, hospitals, or research institutions to conduct the coroner's scientific investigation (§ 27491.45, subd. (a)(1)).

In this case, Foucrault, who was elected to the position of coroner, is not a medical doctor. (Cf. § 24010 [providing for office of medical examiner in lieu of office of coroner].) He must therefore employ physicians such as Dr. Benson to conduct postmortem exams. The record shows Foucrault granted Dr. Benson the authority to use his professional medical judgment to conduct such exams, including the authority to retain organs for purposes of investigation into cause of death. According to Dr. Benson, he has had that authority through "three coroners, three chief deputy coroners, over a period of 47 years." Foucrault delegated the direct supervision of Dr. Benson to his chief deputy. Foucrault's chief deputy at that time was also not a doctor, having joined the coroner's office after working in law enforcement. The chief deputy approved (albeit after the fact) Dr. Benson's decision to retain Nicholas Picon's heart.

Given the coroner's duties and the realities involved in performing those duties, we disagree with Picon that the Legislature literally meant only the person occupying the office of coroner can make the decision to retain parts of the body removed at an autopsy. Instead we hold a physician employed by the coroner may make that decision.[5]

---

[5] Although Picon attaches much significance to Dr. Benson's employment status, she never discusses the legal basis for the county's liability for Dr. Benson's acts. (See § 815.4 [public entity liable for injury proximately caused by tortious act or omission of independent contractor to same extent public entity would be subject to liability if it were a private person].) As a general rule, an employer of an independent contractor is not liable for physical harm caused to another by the contractor. (*McCarty v. Department of Transportation* (2008) 164 Cal.App.4th 955, 970 [79 Cal.Rptr.3d 777].) Although there are many exceptions to the general

*Tissues of the Body*

Although not set forth in a separate argument in her briefs, Picon alludes to the language in section 27491.4, subdivision (a), that allows the coroner to retain "only those tissues of the body" necessary for the coroner's inquiry. Picon apparently believes the reference to tissues precludes retention of an entire organ.

■ Section 27491.4 does distinguish between tissues of the body and organs in another part of subdivision (a) (make an "analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body"). Further, relevant dictionary definitions of the word "tissue" do not inexorably lead to a conclusion the word includes organs of the body.[6]

The problem for Picon, of course, is that while section 27491.4 might not expressly provide for retention of organs, section 27491.45 does. That section specifically permits the retention of parts of the body removed at the time of an autopsy to study them. Picon alleges Dr. Benson retained her son's heart because he was intrigued by the rarity of the heart condition he had discovered. In other words, he wanted to study it. There is no hint or suggestion that Dr. Benson retained the heart for some depraved or repugnant purpose. Instead he allegedly sought to satisfy his or a colleague's scientific curiosity regarding the heart condition. Only if that scientific curiosity had led to the release of the heart to a third party for noncoroner research purposes would consent from next of kin have been required. (*Id.*, subd. (a)(1).) Notwithstanding much insinuation by Picon of a conspiracy to funnel body parts to Stanford University for research, she produced no evidence to rebut defendants' showing that Nicholas Picon's heart did not leave the coroner's office. (See *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250–1253 [91 Cal.Rptr.3d 532, 203 P.3d 1127] [evidence of general pattern of misconduct not sufficient to support claim that defendant mishandled plaintiff's decedent's body].)[7]

---

rule (see Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2009) ¶ 2:327 et seq., p. 2-95 et seq. (rev. # 1, 2009)), we are left to guess what exception might apply here.

[6] Stedman's Medical Dictionary (27th ed. 2000) at page 1838 provides the following definition of tissue: "A collection of similar cells and the intercellular substances surrounding them." According to that dictionary, there are four basic tissues in the body, including muscle tissue. (*Ibid.*) "[C]ardiac muscle" is listed under the definition. (*Ibid.*) The Attorneys' Dictionary of Medicine, however, in defining "tissue," states, "An organ also has a special function, and it may be composed of one kind of tissue, but usually it is composed of several kinds of tissue, and in this respect it differs from a tissue." (6 Schmidt, Attorneys' Dict. of Medicine and Word Finder, p. T-144 (rel. 43-12/2009).)

[7] We hasten to add that although there was evidence the coroner's office utilized the services of Stanford University to determine cause of death, Picon produced no evidence of a conspiracy to funnel body parts to Stanford University for research.

Ironically, the only reason the distinction between tissues and organs is relevant here is because defendants insist the sole reason they retained Nicholas Picon's heart was to investigate cause of death. Thus it is defendants themselves who invoke section 27491.4 as authority for the discretion to retain an organ to determine cause of death.

■ We agree with defendants that section 27491.4 must be read in conjunction with section 27491.45, which specifically provides for retaining parts of the body. "Under [section] 27491.4 et seq., the coroner is authorized to remove, and either retain or release to specified entities, body tissues and parts." (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Criminal Procedure, § 43, p. 65.) The scientific study permitted by section 27491.45 must include a study to determine cause of death. Otherwise, the coroner could retain an organ for scientific study or training, but not for determining cause of death—one of the coroner's primary missions. We can think of no reason the Legislature would intend such a result, and Picon suggests none.[8] (See *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 169 [2 Cal.Rptr.2d 536, 820 P.2d 1046] [code sections in pari materia must be harmonized with each other to extent possible].)

### Quasi-property *Right and the* Palmquist *Case*

■ As Picon contends, she had a temporary, *quasi-property* right in the body of her deceased son for purposes of burial. (See *Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 221–222 [7 Cal.Rptr.3d 597]; see also Health & Saf. Code, § 7100; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 460, pp. 681–684.) The right is typically invoked in actions involving malfeasance by funeral homes. (See, e.g., *Sinai Temple v. Kaplan* (1976) 54 Cal.App.3d 1103, 1110–1112 [127 Cal.Rptr. 80]; *Cohen v. Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1, 4–5 [41 Cal.Rptr. 481], disapproved on other grounds in *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 889 [2 Cal.Rptr.2d 79, 820 P.2d 181].) Next of kin, however, have also asserted the right against the coroner. (See, e.g., *Davila v. County of Los Angeles* (1996) 50 Cal.App.4th 137, 140 [57 Cal.Rptr.2d 651] [failure to make reasonable efforts to locate next of kin]; *Gray v. Southern Pacific Co.* (1937) 21 Cal.App.2d 240, 242 [68 P.2d 1011] [wrongful performance of autopsy].) There is no interference with that right, however, when the coroner performs a lawful autopsy. (*Gray v. Southern Pacific Co., supra,* at p. 246.)

---

[8] At a time when the law did not expressly provide for the retention of tissues or organs, the Attorney General nevertheless opined: "We therefore conclude that no legal liability attaches to the coroner or autopsy surgeon who, in order to discover the cause of death—a duty imposed upon him by law—removes tissue and organs and, when reasonably necessary to complete his diagnosis, retains them after the burial of the body." (27 Ops.Cal.Atty.Gen. 46, 49 (1956).)

The summary judgment record shows defendants performed a lawful autopsy. Picon nevertheless refers this court to *Palmquist v. Standard Acc. Ins. Co.* (S.D.Cal. 1933) 3 F.Supp. 358 (*Palmquist*), as support for her contention that defendants' retention of her son's heart interfered with her quasi-property right. She believes the facts of her case "mirror almost identically the facts in *Palmquist*."

*Palmquist* is a federal district court ruling on a motion for judgment notwithstanding the verdict. (*Palmquist, supra*, 3 F.Supp. at p. 359.) The case did involve the retention of organs following an autopsy. There the similarities between *Palmquist* and the instant case end. First and foremost, *Palmquist* did not involve the acts of a coroner. The autopsy in *Palmquist* was performed by physicians representing an insurance company. They were hired to determine whether the decedent's death was accidental for insurance purposes. (*Ibid.*) Those physicians retained the decedent's heart, brain, and one kidney after the autopsy for further pathological examination. Some months later, the decedent's spouse asked that the organs be returned. Her request was refused. A jury returned a verdict in favor of the spouse for her emotional distress. The district court denied the defendants' motion for entry of judgment notwithstanding the verdict. (*Palmquist, supra*, 3 F.Supp. at p. 360.)

The federal court's decision in *Palmquist* says nothing regarding the duties of a coroner, and liability in *Palmquist* appears to have been found based not on the initial retention of the organs, but on the refusal to return them. *Palmquist* has no application here.

### Unsupported Factual Claims

We believe we have sorted out and discussed Picon's best legal arguments, but Picon has also made several allegations of serious misconduct against defendants, including claims that they may have altered the autopsy report and that the heart returned to her may not have been her son's heart. Many of those claims are not supported by a citation to the record; in fact Picon did not cite to the record in her statements of fact to this court. And in those instances where she has cited to the record, the referenced material does not provide an evidentiary basis for her claims. For example, in support of her allegation that Stanford University kept organs sent by the coroner for "scientific future research," she cites only to a long soliloquy by her attorney at Dr. Benson's deposition.

This failure to cite to evidence in the record repeats a pattern that began in the trial court. With the exception of a few references to the autopsy report, Picon's opposition to the motions for summary judgment was bereft of citations to the record. Her failure to cite to the record was not for lack of providing materials in opposition to the motions. Picon submitted hundreds of pages of deposition transcripts, numerous declarations, and several documentary exhibits in opposing the motions.

In any event, the summary judgment record contains nothing to rebut defendants' showing that Nicholas Picon's heart was removed and retained to determine cause of death. Not even Dr. Melinek's declaration, the one piece of evidence the trial court identified as contradicting that showing, created a material, triable issue of fact. That Dr. Melinek did not understand why Dr. Benson retained the entire heart, or that she did not believe there was any reason to retain the heart, was irrelevant to the question of whether defendants acted within the discretion provided by sections 27491.4 and 27491.45. That she disagreed with Dr. Benson's decisions, actions, or conclusions does not mean defendants violated a duty to Picon. In fact, as defendants and amici curiae (the National Association of Medical Examiners and the California Society of Pathologists) point out, if anything Dr. Melinek's declaration actually underscores Dr. Benson's opinion that a specialist should confirm the cause of death. As things stand, we have two forensic pathologists reaching different conclusions on cause of death, so exactly why Nicholas Picon's heart failed remains unresolved.

Ultimately, the disagreement over whether Dr. Benson should have retained the heart (or how much of it he should have retained), and whether he reached the right conclusion on cause of death is irrelevant. Even if we credit Picon's more plausible factual allegations—that Dr. Benson retained the heart to study it and that he intended to send it to Stanford University for research—defendants would still be entitled to judgment in their favor. The law did not impose a duty on defendants to obtain Picon's consent unless and until they acted to send the heart to Stanford University for noncoroner purposes.[9]

Finally, if defendants are to blame for anything here, it is poor communication with the Picon family. To that end we note the record shows the coroner's office has now adopted a formal policy with respect to notifying family members of the retention of organs.

---

[9] As we conclude defendants did not owe a duty to Picon, it is unnecessary for us to discuss Dr. Benson's statute of limitations argument.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its orders denying defendants' motions for summary judgment. Instead the court shall issue new orders granting those motions. Defendants are entitled to recover their costs for this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Ruvolo, P. J., and Sepulveda, J., concurred.

A petition for a rehearing was denied July 13, 2010, and the petition of real party in interest for review by the Supreme Court was denied September 22, 2010, S184910.