Filed 9/9/13  Khdrlaryan v. Olympia Medical Center CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUSIK KHDRLARYAN, | B243321 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC420161) |
| OLYMPIA MEDICAL CENTER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Ronald M. Sohigian, Judge.  Affirmed.

Shegerian & Associates, Inc. and Carney R. Shegerian for Plaintiff and

Appellant.

Seyfarth Shaw, Laura Wilson Shelby and Joshua A. Rodine for Defendants and

Respondents.

## INTRODUCTION

Lusik Khdrilaryan (plaintiff) appeals a summary judgment in favor of Olympia Health Care, LLC dba Olympia Medical Center (Center) and the "Medical Staff of Olympia Medical Center" (collectively, defendants). She contends that the evidence creates a triable issue of fact as to whether defendants terminated her employment as a respiratory therapist because of her complaints about safety issues at the hospital. She also contends that summary judgment of her defamation cause of action was in error because the subject statement was false. We disagree and affirm.

## FACTUAL BACKGROUND

Plaintiff began to work as a respiratory therapist for the Center in June 2000. She was supervised by Isaac Addo. Jim Petronie was the manager of her department. On multiple occasions throughout her employment, plaintiff complained to Addo, Petronie, and representatives of the human resources department about (1) being asked to handle billing-related tasks, (2) inadequate medical equipment at the Center, and (3) the excessive workload assigned to respiratory therapists. Addo told plaintiff, "if you keep complaining like this, one day you will get fired."

On March 22, 2009, plaintiff was assigned to assist with a procedure on a four-year-old boy who came into the emergency room with a swollen jaw and abscessed tooth. Plaintiff was responsible for setting up the emergency respiratory care equipment. The patient was placed in an area enclosed by curtains within the Emergency Department. In preparation for the procedure, plaintiff left the patient's area to retrieve a pediatric ambu-bag. She was only able to find a used, adult ambu-bag.

When she returned to the patient's area with the ambu-bag, the doctor had already begun the procedure.

At that point, plaintiff began to think of her own child who died at the age of three in 1982. She started to feel ill and felt she might fall. She said "I don't feel good" but is not sure if the doctor heard her. Approximately ten to fifteen minutes into the procedure, plaintiff called another respiratory therapist to come and replace her. Plaintiff left the patient's area before another therapist arrived.

When Petronie learned that plaintiff had left during the course of a procedure, he launched an investigation into the incident. He concluded that plaintiff had prepared the wrong equipment for the patient and had "walked out on the patient" after sedation medication had been administered. He further noted that plaintiff had several opportunities to express her discomfort with the procedure prior to the administration of conscious sedation.

Approximately a week after the incident, Addo told plaintiff that she had "left patient's side without calling for backup." Two other members of her department were present when Addo made this statement. Addo also told Petronie that plaintiff had "left the patient." Plaintiff was terminated on April 9, 2009. She subsequently applied for other jobs and told potential employers that the Center had fired her.

### PROCEDURAL BACKGROUND

In August 2009, Plaintiff filed a complaint against the Center and the "Medical Staff of Olympia Medical Center" with causes of action for wrongful termination in violation of public policy and defamation. The complaint alleged that the defendants

3

terminated plaintiff for making complaints about understaffing and inadequate medical equipment at the Center. By terminating plaintiff, the defendants were alleged to have violated the public policy delineated in Labor Code sections 6310 through 6312.[1] The complaint further alleged that the defendants "falsely informed individuals . . . that plaintiff was an incompetent and disloyal employee who had walked off the job," and that "[p]laintiff was forced to re-publish the defamatory comments . . . to third parties."

The defendants jointly moved for summary judgment or summary adjudication of each cause of action. They argued that plaintiff did not engage in activity protected by Labor Code sections 6310 through 6312, that the Center terminated plaintiff for a legitimate business reason, and that there was no evidence of a pretextual reason for the termination. They also argued that the alleged defamatory statements were privileged, and that there was no evidence that the statements had been published, were

---

[1]     Labor Code section 6310, subdivision (b) prohibits an employer from discriminating against an employee who "has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment." Labor Code section 6311 prohibits an employer from discharging an employee for "refusing to perform work in the performance of which this code . . . will be violated, where the violation would create a real and apparent hazard to the employee or his or her fellow employees." Labor Code section 6312 authorizes an employee to "file a complaint with the Labor Commissioner" if she "believes that [] she has been discharged or otherwise discriminated against by any person in violation of Section 6310 or 6311 . . . ."

made with malice, or that plaintiff had been compelled to republish any false statements.[2]

In opposition, plaintiff argued that her complaints about "patient safety" constituted protected activity under Labor Code section 1102.5, subdivision (b),[3] and that evidence her supervisor threatened to fire her if she continued to complain showed pretext. With respect to the defamation cause of action, plaintiff argued that the alleged defamatory statements were not privileged because they were not made to "interested" parties and were made with malice.

The trial court granted summary judgment of the wrongful termination cause of action on the grounds that plaintiff had not raised a triable issue of fact as to whether she had engaged in protected activity. The court concluded that Labor Code sections 6310 through 6312 "apply only to workplace safety issues," and that, here, plaintiff complained about risks to patients. With respect to Labor Code section 1102.5, the court concluded that plaintiff had not identified a statute, rule or regulation that the defendants had allegedly violated but only argued that she had complained about threats to patients' safety. Lastly, the court held that the alleged defamatory statements were

_____

[2]     In addition, Defendants argued that plaintiff was not employed by the "Medical Staff of Olympia Medical Center," and therefore, this defendant was not liable for wrongful termination.

[3]     Labor Code section 1102.5 subdivision (b) prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

5

privileged because they were only made to interested parties and there was no evidence the defendants acted with malice.

The court entered judgment in favor of the defendants on August 9, 2012. Plaintiff timely appealed the judgment.

*CONTENTIONS*

Plaintiff contends that: (1) her complaints about understaffing implicated workplace safety issues protected by Labor Code sections 6310 through 6312; (2) she engaged in protected activity under Labor Code section 1102.5 when she complained to defendants about their illegal practices; (3) her termination violated the public policy in support of patients' safety delineated in various sections of the Business and Professions Code; (4) there were triable issues of fact as to whether the defendants terminated her for complaining about "workplace and patient safety" ; (5) the alleged defamatory statement was false because there was evidence plaintiff did not "abandon a procedure without first bringing in a replacement" ; (6) the statement was published; and (7) she was compelled to republish that statement.

*DISCUSSION*

1. *Standard of Review*

A motion for summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review an order granting a motion for summary judgment de novo. (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 931.) In conducting our de novo review, we employ the same three-step analysis as the trial

6

court. (*Benson v. Superior Court* (2010) 185 Cal.App.4th 1179, 1185.) "The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1124.)

2. *Wrongful Termination in Violation of Public Policy*

Plaintiff makes three arguments about the public policies she claims were violated by defendants when they terminated her. Plaintiff contends that she engaged in protected activity under Labor Code sections 6310 through 6312 when she complained about "workplace and patient safety," that Labor Code section 1102.5, subdivision (b) prohibited defendants from terminating her for complaining about illegal practices, and that the public policy rooted in Business and Professions Code's sections on patient safety was violated when defendants discharged her for complaining about hazards to patients.

An employer's right to terminate an at-will employee for any reason (Lab. Code, § 2922) is limited by the common law rule that an employer may not discharge an employee for a reason that contravenes a fundamental public policy. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71.) To establish a tort cause of action for wrongful termination in violation of public policy, a plaintiff must establish that (1) the plaintiff was employed by the defendant; (2) the defendant discharged the plaintiff; (3) the defendant did so for a reason that contravenes public policy; and (4) the plaintiff

7

suffered harm as a result. (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 641.)

A plaintiff alleging wrongful discharge in violation of public policy must identify the specific source of the claimed "fundamental public policy." (*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at p. 82.) Public policy claims that are " 'largely unaccompanied by citations to specific statutory or constitutional provisions' " are "plainly insufficient to create an issue of *material* fact justifying a trial on the merits of [the plaintiff's] claims." (*Id.* at p. 83.) "[T]he omission 'puts [the defendant] and the court in the position of having to guess at the nature of the public policies involved, if any. . . . ' " (*Ibid.*) "[A] claim that does not identify the basis of its wrongful termination allegations will not prevail on summary judgment." (*Id.* at p. 83, fn. 7.)

Plaintiff first contends that defendants violated the public policies based in Labor Code sections 6310 through 6312 when they terminated her for complaining about "workplace and patient safety." Labor Code section 6310 prohibits an employer from discharging an employee for complaining of unsafe working conditions. Similarly, Labor Code section 6311 prohibits an employer from terminating an employee for "refusing to perform work" when working "would create a real and apparent hazard to the employee or his or her fellow employees." Labor Code section 6312 provides a remedy for the violation of sections 6310 and 6311.

Plaintiff did not allege that there were unsafe working conditions for employees at the Center but only alleged that defendants' "understaffing and insufficient equipment . . . constitute[d] a danger to their patients." In opposition to the motion for

8

summary judgment, plaintiff argued that she had complained about "her employer's compromises of patient safety," and did not claim that she had complained about safety hazards to herself or other employees. For the first time on appeal, plaintiff argues that her complaints "about unsafe staffing levels at defendants' hospital [] directly implicated work place [sic] safety issues . . . . " However, plaintiff does not provide any supporting explanation as to why understaffing presented a hazard to herself or other employees. In fact, plaintiff later reiterates the argument she made in the trial court that "defendants did not have enough respiratory therapists on staff to care for patients and [] *this was putting patients at risk*." (Emphasis added.) Complaints about risks to the public in general are not protected by the public policy delineated in Labor Code sections 6310 through 6312. (*Creighton v. City of Livingston* (E.D. Cal. 2009) 628 F.Supp.2d 1199, 1223.)

Plaintiff also argues that defendants violated the public policy based in Labor Code section 1102.5, subdivision (b) when they terminated her for complaining about illegal conduct. Labor Code section 1102.5, subdivision (b) prohibits retaliation against employees for "disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." "Even though the statute addresses employee reports to public agencies rather than to the employer . . . it does evince a strong public interest in encouraging employee reports of illegal activity in the workplace. [Citation.]" (*Collier v. Superior Court* (1991) 228 Cal.App.3d 1117, 1123.)

9

Here, the complaint did not allege any specific federal or state code violation stemming from plaintiff's safety concerns. In opposition to the motion for summary judgment, plaintiff also did not cite to any statute, rule or regulation that may have been violated by the disclosed conduct. Rather, plaintiff only made the general argument that she had notified defendants about their "illegal practices." Plaintiff failed to identify any legal foundation for her complaint that defendants engaged in illegal practices. Therefore, she did not show that she engaged in protected activity under Labor Code section 1102.5.

Plaintiff also cites to various sections of the Business and Professions Code, including the Respiratory Care Act, in support of her argument that defendants violated a fundamental public policy when they terminated her for complaining about compromised patient safety. According to plaintiff, these statutes regulate medical care and delineate a public policy in favor of qualified care for patients. Plaintiff did not make this argument in the trial court and therefore forfeited the argument on appeal. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) A plaintiff must identify the basis of her wrongful termination claim, at least at the stage of summary judgment, otherwise, the defendant and the court are left to "guess at the nature of the public policies involved, if any." (*Green v. Ralee Engineering Co., supra,* 19 Cal.4th at p. 83, fn. 7.)

Accordingly, the trial court correctly concluded that plaintiff had not identified a source of the claimed public policy that protected her activity. Therefore, we need not

consider plaintiff's argument that there were triable issues of fact as to whether the defendants were motivated by pretext when they terminated her.

    3.    *Defamation*

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) California recognizes a cause of action for self-defamation "where a plaintiff is compelled to republish the [defamatory] statements in aid of disproving them." (*Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1285.) Plaintiff contends that there are triable issues of fact as to whether the alleged defamatory statement that she "abandon[ed] a procedure without first bringing in a replacement" was false, as to whether this statement was published, and as to whether she was compelled to republish this statement.

With respect to the falsity of the statement, plaintiff argues that there was evidence she waited for another respiratory therapist to arrive before leaving the patient. In support of this argument, plaintiff cites to her deposition testimony in which she stated that "I called [another respiratory therapist] for her to come and relieve me. . . . I also called [a second respiratory therapist]. After I saw that they are coming in . . . . I left . . . . " However, this general statement was followed by more specific testimony by plaintiff in which she admitted that she left the patient's area before the

11

other therapists arrived to replace her.[4] Plaintiff also admitted in her written statement to the Center that she had left the patient's area before another therapist arrived to replace her.[5] Accordingly, she has not shown that there was a triable issue of fact as to the truth of the subject statement. As the undisputed evidence established that the subject statement was true, we need not reach the issue of whether the statement was published.[6]

With respect to the self-defamation at issue, plaintiff contends that she was compelled to tell potential employers that defendants had accused her of abandoning

---

[4] "[Defendants' counsel:] I understand that in the emergency room there are lots of different curtain areas for each patient. I just want to understand, you were not in this patient's curtain area when [the other respiratory therapists] arrived; correct?
[Plaintiff:] No. It was almost simultaneous, they come in, and I left.
Q. Well, did they come in and then you left or did you leave and then they came in?
A. We didn't cross each other. It was not my job -- it was my judgment. I did not cross -- we did not talk to each other. It was my judgment that they were already here, so I have to go and take care of myself.
Q. Okay. You were not in the patient's curtain area at the same time as [the other respiratory therapists]; correct?
A. No.
Q. It is correct, what I said; right?
A. What you said is correct."

[5] In plaintiff's written statement to the Center about the incident, she wrote that "[w]hile waiting for [another respiratory therapist] in patient room 3, I began feeling worse and as though I was going to collapse. This then lead me to inform [the doctor] of my situation and need for departure. I continued to await for [the other respiratory therapist] near the ER Hallway (near room 7). The gap time between my departing room 3, and [the other respiratory therapist's] arrival was less than a minute."

[6] We also decline to address plaintiff's one-sentence conclusion that defendants acted with malice. (*Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012, 1021 ["An appellate court is not required to consider alleged error where the appellant merely complains of it without pertinent argument."].)

a patient in the middle of a procedure. In support of this argument, plaintiff only cites to her deposition testimony in which she stated that she told a potential employer that defendants had fired her. Plaintiff admits that she was, in fact, fired. Furthermore, even if she did tell potential employers that defendants had fired her for leaving a patient in the middle of a procedure without waiting for another therapist to replace her, as explained above, this statement is also true according to her own testimony. Therefore, plaintiff has not cited to any evidence showing that she repeated a defamatory statement to potential employers. We therefore conclude that plaintiff failed to create a triable issue of material fact on this issue and that summary judgment of this cause of action was proper.

## *DISPOSITION*

The judgment is affirmed.  The defendants shall recover their costs on appeal.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.